**Jamie F. GRAHAM, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–546C.**

United States Court of Federal Claims.

Aug. 23, 1996.

---

6. Def.Mot. for Summ.J.App.Ex. 13–14.

Jamie F. Graham, Northfield Falls, Vermont, pro se.

Thomas O. Mason, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director, Washington, DC, for defendant. Maj. Douglas K. Mickle, Office of the Staff Judge Advocate, Department of the Army, of counsel.

## *OPINION*

ANDEWELT, Judge.

In this military pay action, plaintiff, Jamie F. Graham, seeks backpay and related damages from the United States Army (Army) for the period December 24, 1991, through April 3, 1992, during which time plaintiff was incarcerated as a result of a conviction by court-martial. Plaintiff contends that under controlling statutes and regulations, plaintiff is entitled to pay beyond the date of his court-martial through April 3, 1992, the date the convening authority affirmed the court-martial sentence. This action is before the court on defendant's motion for summary judgment. Defendant contends that under controlling statutes and regulations, because plaintiff was incarcerated during the period in issue and not on active duty he is not entitled to pay and allowances for that time. For the reasons set forth below, defendant's motion for summary judgment is denied.

### I.

On August 4, 1989, plaintiff enlisted in the Army National Guard for a term of three years. On December 6, 1990, as a part of Operation Desert Shield, plaintiff's reserve unit was ordered to active duty for a period of 180 days, which later was extended to 360 days, establishing plaintiff's expiration of term of service (ETS) as December 1, 1991. On May 28, 1991, while on active duty, plaintiff failed to report to his assigned unit after a week of convalescent leave. When plaintiff failed to comply with the Army's orders to return to his base, the Army issued a warrant for plaintiff's arrest.

On October 9, 1991, plaintiff was apprehended and later placed in military confinement to await trial by court-martial on various charges, including desertion and larceny. At the time of apprehension, the Army returned plaintiff to full-pay status, which was commensurate with his active-duty status. Although plaintiff's active-duty status was scheduled to end on December 1, 1991, as an administrative convenience, the Army's Finance and Accounting Center established December 24, 1991, as a fictitious ETS date for all reserve soldiers called to active duty for Operation Desert Shield. Hence, plaintiff continued to receive full pay through December 24, 1991.

On December 6, 1991, the court-martial found plaintiff guilty of all charges and sentenced plaintiff to a reduced grade of Private, E–1; forfeiture of all pay and allowances; confinement for seven years; a fine of $5,769.67, and, if plaintiff fails to pay the fine in full within the seven years, additional confinement of up to two years; and a dishonorable discharge from the Army. On April 3, 1992, the convening authority approved the court-martial sentence as adjudged and ordered the sentence executed except for the dishonorable discharge. As noted above, plaintiff received full pay and allowances from the time he was called to active duty until he failed to report for duty on May 28, 1991, and then again from the time of his arrest through December 24, 1991.

### II.

A soldier's entitlement to pay is set forth in 37 U.S.C. § 204(a) which provides:

> The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title—
>
> (1) a member of a uniformed service who is on active duty; and
>
> (2) a member of a uniformed service, or a member of the National Guard who

is not a Reserve of the Army or the Air Force, who is participating in full-time training, training duty with pay, or other full-time duty, provided by law, including participation in exercises or the performance of duty under section 10302, 10305, 10502, or 12402 of Title 10, or section 503, 504, 505, or 506 of Title 32.

Plaintiff contends that he is entitled to pay for the disputed period under Section 204(a)(1) because he was on active duty during that period. Plaintiff rests this argument on Paragraph 1–24 of Army Regulation 635–200 which provides:

> **1–24. When investigation is initiated with view to trial by court-martial or soldier is awaiting trial or result of trial**
>
> *     *     *     *     *     *
>
> b. A soldier who is awaiting trial or result of trial by court-martial when he or she would otherwise be eligible for discharge or release from [active duty], will not be discharged or released until final disposition of the court-martial charges.

Plaintiff argues that the convening authority's decision of April 3, 1992, constituted the "final disposition of the court-martial charges," and hence, under Paragraph 1–24, plaintiff was not released from active duty until April 3, 1992. Because Section 204(a) obliges the United States to pay soldiers who are on active duty, plaintiff contends that he is entitled to pay through April 3, 1992. Defendant responds with a series of alternative arguments. Ultimately, however, none is convincing.

### III.

■ Initially, defendant contends that paying plaintiff for the disputed period is inconsistent with Section 10317d of the Department of Defense Military Pay and Allowances Entitlements Manual (DODPM), which provides:

> If a member is confined awaiting court-martial trial when the enlistment expires, pay and allowances end on the date the enlistment expires. If the member is ac-

quitted when tried, pay and allowances accrue until discharge.

Defendant argues that the phrase "enlistment expires" as used in Section 10317d is synonymous with "term of service expires" (as represented by ETS), that plaintiff's ETS was December 1, 1991,[1] and that because plaintiff was not "acquitted when tried," plaintiff is not entitled to pay after December 1, 1991.

The deficiency in this argument, however, is that defendant fails to cite any DODPM provision or any other authority that states that the phrase "enlistment expires" is synonymous with "term of service expires." The only document in the record that refers to plaintiff's term of "enlistment" is the enlistment contract which shows plaintiff's date of enlistment as August 4, 1989, and provides for expiration of enlistment three years later, on August 3, 1992. Absent some clear indication that the Department of Defense (DOD) intended "enlistment" in Section 10317d to have a different meaning from that contained in the enlistment contract, the court will not provide it with such a definition. If August 3, 1992, is the date plaintiff's enlistment expired, then Section 10317d would not bar plaintiff's claim for pay through April 3, 1992, because Section 10317d covers only confinement after termination of enlistment.

Moreover, it should be stressed that it is the norm rather than the exception for soldiers assigned to active duty to accrue pay during military confinement. Section 10316 of the DODPM so provides, as follows:

> **Military Confinement**
>
> a. **General.** Pay and allowances accrue to a member in military confinement except:
>
> (1) When confined by military authorities, for civil authorities.
>
> (2) When pay and allowances are forfeited by court-martial sentence.
>
> (3) When the term of enlistment expires.

---

1. Defendant argues that the active duty orders covering plaintiff's reserve unit were self-executing and therefore plaintiff's ETS was December 1, 1991. Defendant also suggests, however, that DOD administratively extended plaintiff's ETS to December 6, 1991.

(Citations omitted.) Section 10317d implements Section 10316a(3) and because Section 10317d covers entitlement to pay only after enlistment expires, it does not interfere with the right of a soldier on active duty, prior to such expiration, to receive pay for periods during which the soldier is confined in prison and unable to perform ordinary, full-duty functions. Hence, to allow a reservist to receive pay prior to the expiration of his or her term of enlistment for periods during which he or she is on active duty but confined and awaiting final disposition of the court-martial charges is merely to treat a reservist on active duty in the same way as the regulations treat a nonreservist on active duty.

### IV.

■ Defendant presents the alternative argument that Paragraph 1–24 cannot be the basis of a compensation claim. Defendant notes correctly that a statute or regulation can form the basis for a monetary claim in this court only if it "can fairly be interpreted as mandating compensation by the Federal government for the damage sustained." *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)). Defendant argues that the applicable money-mandating regulations are contained in the DODPM and that Paragraph 1–24 cannot support a claim for compensation because Army Regulation 635–200, which contains Paragraph 1–24, concerns only non-monetary, administrative matters involving the retention of soldiers beyond the expiration of their term of service.

In response, first, Section 10316a of the DODPM, as set forth above, contains a broad entitlement to pay and allowances for soldiers on active duty and in military confinement unless one of the three exceptions listed therein applies. None of those exceptions applies to plaintiff.

Second, in any event, there is no dispute that Congress adopted a money-mandating statute that requires payment while a soldier is on active duty, *i.e.,* 37 U.S.C. § 204(a). Thus, the only issue when applying this man-

date is whether the soldier was on active duty during the period in question. Paragraph 1–24 would appear to address this very issue by defining when a soldier is released from active duty. Both Section 204(a) and Paragraph 1–24 use the phrase "active duty" and absent some clear indication to the contrary, Paragraph 1–24 would appear to implement Section 204(a). Hence, the two provisions together mandate the payment of money to plaintiff through the date of the final disposition of the court-martial charges.

In this regard, by maintaining plaintiff on active duty, Paragraph 1–24 appears to fulfill a necessary function. DOD apparently does not have jurisdiction to court-martial a reservist who is not on active duty. *See* Rules for Courts–Martial (R.C.M.) 204(b)(1) ("A member of a reserve component must be on active duty prior to arraignment at a general ... court-martial."); *see also* 10 U.S.C. § 802(d) (allowing the ordering of a reservist to active duty for purposes of court martial). Therefore, to proceed with a court-martial, a reservist must be placed on active duty. Pursuant to Section 204(a), at least in the absence of contrary regulations, such placement brings with it an entitlement to pay.

### V.

■ Next, defendant contends that even if Paragraph 1–24 creates a regulatory entitlement to pay, final disposition of plaintiff's court-martial charges occurred on December 6, 1991, when the court-martial proceedings concluded and a sentence was issued. Defendant bases this argument on various provisions contained in the Manual for Courts–Martial and the R.C.M. Defendant explains its argument in its supplemental brief, as follows:

R.C.M. 306 provides guidance on the initial disposition of offenses triable by courts-martial, and R.C.M. 401 provides guidance on the disposition of charges. Pursuant to R.C.M. 306, each commander has discretion to dispose of offenses committed by members of that command. . . .

R.C.M. 401 provides guidance on the actual disposition of charges triable by a court-martial. R.C.M. 401(c) authorizes

several disposition options for a commander receiving charges from a subordinate commander. The superior officer's options range from taking no action to referring the charges to a court-martial for trial. However, before charges can be referred to a General Court–Martial for disposition, a thorough and impartial investigation must be conducted pursuant to 10 U.S.C. § 832 and R.C.M. 405, and the charges must be referred to the staff judge advocate for consideration and advice pursuant to 10 U.S.C. § 834 and R.C.M. 406. Once a commander decides to dispose of charges by trial by a court-martial, the charges are referred to a specific court-martial panel for trial. *See* Chapters V and VI, Manual for Courts–Martial, 1984. Accordingly, once the charges have been referred for trial by a court-martial, a commander has disposed of those charges. *See* R.C.M. 401 and 601.

The final disposition of the court-martial charges occurs when the court-martial trial is concluded, and the result of trial has been completed.

■ Defendant's argument misconstrues the basic structure created in the Manual for Courts–Martial and the pivotal role of the convening authority in the resolution of the court-martial charges. Thereunder, a court-martial finding that a soldier is guilty is in no sense the final disposition of the court-martial charges. In addition to convening the court-martial (R.C.M. 504(a) ("A court-martial is created by a convening order of the convening authority.")), the convening authority considers the court-martial sentence and has broad discretion to dispose of any charges against the soldier in a way inconsistent with the findings of the court-martial. According to R.C.M. 1107(d), "[t]he convening authority may for any or no reason disapprove a legal sentence in whole or in part, mitigate the sentence, and change a punishment to one of a different nature as long as the severity of the punishment is not increased." Consideration by the convening

authority is not appellate review and the convening authority may change the disposition ordered by the court-martial even if the court-martial made no factual or legal errors. *See* R.C.M. 1107(c) discussion ("The convening authority is not required to review the findings for legal or factual sufficiency and is not required to explain a decision to order or not to order a rehearing, except as provided in [R.C.M. 1107(e), which covers rehearings].").  Indeed, the convening authority may even consider materials not included in the record considered by the court-martial. *See* R.C.M. 1105(b)(3).

Defendant is correct that a commander has numerous options for disposing of offenses under R.C.M. 401. But R.C.M. 401 does not categorize any of these options or the issuance of the court-martial's findings as involving the "final disposition" of the court-martial charges. Indeed, R.C.M. 401 never defines the phrase "final disposition." *Black's Law Dictionary* 630 (6th ed. 1990) defines "final disposition" as "a conclusive determination [whereby] ... nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon."  Absent some clear indication to the contrary, it is appropriate to define words in regulations according to their dictionary definitions.  The dictionary definition herein is fatal to defendant's position.  Given the broad discretion allowed a convening authority under R.C.M. 1107–11, until the convening authority acts on the court-martial sentence, the obligations of the soldier are not fixed.[2]

It is appropriate for the court to clarify one point that relates to the treatment of similarly situated reservists in the future. This court has not concluded that Section 204(a), standing alone, obliges DOD to pay plaintiff for the period in dispute.  That issue is not before the court.  Rather, the issue before the court is limited to implementation of Paragraph 1–24, a regulation that DOD both drafted and adopted.  That regulation

---

2.  Indeed, 10 U.S.C. § 857(a), which addresses soldiers' pay, also supports this conclusion. Section 857(a) states that "[n]o forfeiture may extend to any pay or allowance accrued before [the sentence is approved by the convening authority]."  Hence, until the convening authority acts on the court-martial sentence, the amount of any forfeiture could not possibly be determined much less be deemed to be "fixed."

uses words that bring plaintiff squarely within the scope of Section 204(a), and there is no indication in Paragraph 1–24 that DOD intended the reference to active duty therein to have any different meaning from that in Section 204(a). Nor is there any statement in the pay provisions of the DODPM that indicates that plaintiff should not be deemed to have been on active duty and paid through the date of the final disposition of the court-martial charges.

## VI.

Summary judgment is warranted where there is no dispute as to any material issue of fact and the moving party is entitled to judgment as a matter of law. RCFC 56. Herein, there is no dispute as to any material fact and the sole material dispute between the parties involves a question of law. It would appear that given this court's interpretation of the applicable statutes and regulations, plaintiff would be entitled to summary judgment. But plaintiff, appearing *pro se*, has not moved for summary judgment. Accordingly, it is hereby ORDERED:

1. Defendant's motion for summary judgment is denied.

2. On or before September 23, 1996, defendant shall file a statement discussing whether plaintiff is entitled to summary judgment.