**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 31 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL P. PAALAN,

      Plaintiff - Appellant,

vs.

MARVIN L. NICKELS, Commandant;
DARRYL G. HERMAN, Medical
Officer; LAURA MITCHELL, General
Population Counselor; MARK
JENKINS,

      Defendants - Appellees.

No. 00-3367
(D.C. No. 98-CV-3411-GTV)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.[**]

---

      Michael Paalan, a military prisoner appearing pro se, appeals the district court's dismissal of his Eighth Amendment claim for damages against the federal government. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

---

      [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

      [**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Mr. Paalan, a former petty officer of the United States Navy, is currently serving a life sentence for murder and other offenses at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. Doc. 32 at 1; Doc. 30, Ex. 4(B) at 2; Doc. 26, Ex. D. The following chronology sets forth all facts relevant to our analysis:

- February 12, 1991: Mr. Paalan extends his term of service, postponing his anticipated End of Active Obligated Service ("EAOS") date to November 28, 1995. Doc. 26, Ex. A at 2.

- Early August 1995: Mr. Paalan takes terminal leave and receives a Certificate of Discharge, which lists his separation date as October 31, 1995. Doc. 26, Ex. B.

- October 11, 1995: Mr. Paalan is apprehended by the Naval Criminal Investigative Service ("NCIS").

- October 16, 1995: Mr. Paalan is placed on "legal hold" status. See Doc. 32 at 3.

- November 28, 1995: Anticipated EAOC. Mr. Paalan's service is "involuntarily extended . . . pending trial by court-martial." Doc. 26, Ex. C; see also id., Ex. E.[1]

---

[1] "[M]embers may be extended involuntarily beyond their EAOS as a result of apprehension, arrest, confinement, investigation or filling of charges that may result in a trial by court-martial and the execution of any sentence thereof. If such action is initiated with a view to trial because of an offense under the [Uniform Code of Military Justice] committed by a member prior to their official discharge or separation, even though the term of enlistment or obligation service may have expired, they may be retained in the service for trial and punishment after their period of service would otherwise have expired." Doc. 26, Ex. E (Naval Military Personnel Manual, art. 1050155.1(h)).

- April 17, 1995:  Mr. Paalan pleads guilty and is sentenced to life in prison.  Id., Ex. D.

- January 29 - July 3, 1997:  Prison officials allegedly withhold necessary heart medication from Mr. Paalan, resulting in a variety of physical problems and culminating in a heart attack.  Doc. 1.

- December 17, 1998: Pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), Mr. Paalan files this action in federal court.  Doc. 1.

Mr. Paalan's complaint sought $2,000,000 in damages, transfer to a medical facility, and a court order reporting the prison officials' allegedly wrongful actions "to Federal and State Authorities for the purposes of criminal prosecution."  Id. at 5.  The district court denied all three prayers for relief, holding, inter alia, that Mr. Paalan's damages claim was barred by Feres v. United States, 340 U.S. 135 (1950).  Doc 4 at 2-3.  We affirmed in part, but held that the factual record was insufficient to determine the applicability of Feres.  Paalan v. Nickels, No. 99-3283, 2000 WL 177416, at *1 (10th Cir. Feb. 16, 2000).  Accordingly, we remanded the damages claim for a determination of Mr. Paalan's military status at the time the alleged injuries occurred.  Id.  On remand, the district court found that Mr. Paalan was on active duty during the relevant time period and again dismissed his damages claim.  Doc. 32.  On appeal, Mr. Paalan contends that his active duty ended upon delivery of the Certificate of Discharge,

thereby invalidating the subsequent involuntary extension of his service. Accordingly, he maintains that Feres is inapplicable. We disagree.

"[T]he Government is not liable . . . for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres v. United States, 340 U.S. at 159. Although originally articulated in the context of the Federal Torts Claims Act, the Supreme Court has affirmed that the Feres doctrine applies with equal force in Bivens actions. United States v. Stanley, 483 U.S. 669, 684 (1987) ("We hold that no Bivens remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'") (quoting Feres, 340 U.S. at 146). "Incident to service" is an expansive concept, which "encompasses, at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military." Pringle v. United States, 208 F.3d 1220, 1223-24 (10th Cir. 2000) (internal quotations, citation, and alteration omitted). This court has specifically held that injuries sustained by active duty servicemembers as a result of military medical care are "incident to service" for Feres purposes, e.g., Maddick v. United States, 978 F.2d 614, 615 (10th Cir. 1992); Madsen, 841 F.2d at 1013; see also Quintana v. United States, 997 F.2d 711, 712 (10th Cir. 1993) (reserve status), as are injuries arising out of incarceration in a military facility. Walden v. Bartlett, 840 F.2d 771, 774 (10th Cir. 1988). Feres is inapplicable, however, to injuries

- 4 -

sustained after the completion of an individual's military service. United States v. Brown, 348 U.S. 110, 112-13 (1954). Accordingly, the only question before us is whether Mr. Paalan's service had been completed at the time he was allegedly deprived of his medication. See Madsen, 841 F.2d at 1014.

We must consider Mr. Paalan's early discharge claim in light of established military case law:

> [T]hree elements [must] be satisfied to accomplish an early discharge. First, there must be a delivery of a valid discharge certificate. . . . Second, there must be a final accounting of pay made. . . . Third, appellant must undergo the "clearing" process required under appropriate service regulations to separate him from military service.

United States v. King, 27 M.J. 327, 329 (C.M.A. 1989) (citations omitted). Mr. Paalan has failed to establish these three elements. We agree with the district court's conclusion that the Certificate of Discharge indicates a "command intent" that Mr. Paalan's separation from the Service occur no sooner than October 31, 1995. Doc. 26, Ex. B; United States v. Batchelder, 41 M.J. 337, 339 (C.A.A.F. 1994). His receipt of the Certificate of Discharge in early August 1995 did not negate that intent. See Batchelder, 41 M.J. at 339; see also King, 27 M.J. at 329 ("The mere physical transfer of the discharge certificate to appellant was not 'delivery' of the discharge as required by law . . . ."). The fact that Mr. Paalan took terminal leave prior to his scheduled separation date is also insufficient to accelerate his discharge. See Madsen v. United States, 841 F.2d 1011, 1013 (10th

- 5 -

Cir. 1987) ("[T]erminal leave can be cancelled at any time and the serviceman ordered to report to duty."). Nor does the record support Mr. Paalan's claim that he received a final accounting of his pay on September 12, 1995. Compare Doc. 6 at 2-3 (alleging that final accounting occurred on Sept. 12, 1995); with Doc. 26, Ex. F (showing payments posted in Oct. 1995, Nov. 1995, Dec. 1995, and Jan. 1996). Regardless, there is no evidence that Mr. Paalan underwent the requisite clearance process. Due to Mr. Paalan's inability to satisfy either of the latter two elements required by King, the videotaped "delivery" ceremony to which he repeatedly refers in his pleadings would not affect our disposition of his claim. See, e.g., Doc. 6 at 2.

Accordingly, we agree that Mr. Paalan's receipt of his Certificate of Discharge in August 1995 did not effect an early discharge. The imposition of "legal hold" status on October 16, 1995, effectively preserved the status quo from that date until November 28, 1995, his scheduled EAOS. See United States v. Douse, 12 M.J. 473, 478 (C.M.A.1982); United States v. Clay, 48 C.M.R. 334, 337 (N.C.M.R. 1973). At that point, Mr. Paalan's service was involuntarily extended pending court-martial, pursuant to Article 1050155.1(h) of the Military Personnel Manual. Doc. 26, Ex. C & E. Because there is no indication in the record of any subsequent change in status, we conclude that Mr. Paalan was on active military duty at the time of the alleged injuries. Accordingly, the Feres

doctrine, as extended by <u>Stanley</u>, bars his damages claim and that claim was properly dismissed.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge