**Michael P. PAALAN, pro se, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 01–448C.**

United States Court of Federal Claims.

March 4, 2002.

Michael P. Paalan, Ft. Leavenworth, KS, pro se.

Richard P. Schroeder, Washington, DC, with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. Maj. Hagen W. Frank, Department of the Navy, of counsel.

## OPINION

MILLER, Judge.

This case is before the court on defendant's motion to dismiss and plaintiff's motion for summary judgment. Plaintiff, whose term of service in the United States Department of the Navy (the "Navy") was extended involuntarily when he was court-martialed, seeks back pay pursuant to 37 U.S.C. § 204(a) (1994), 10 U.S.C. § 6330(a)-(c) (2000), and 5 U.S.C. § 8301(a) (2000), and compensation for a Fifth Amendment taking of his personal property. Among the issues to be decided are whether plaintiff retired from active duty service; whether the doctrine of issue preclusion—in this case, defensive collateral estoppel—estops plaintiff from alleging that he retired from the Navy; and whether the Military Claims Act, 10 U.S.C. § 2733 (2000), provides the exclusive remedy for plaintiff's personal property claim. Argument is deemed unnecessary.

## FACTS

The facts, other than the procedural history, are drawn principally from plaintiff's complaint and attachments thereto. See RCFC 10(c). Michael P. Paalan ("plaintiff") voluntarily enlisted in the Navy in 1975. He voluntarily extended his enlistment until November 28, 1995. In anticipation of his retirement, plaintiff requested transfer to the Navy's Fleet Reserve. The transfer was authorized by plaintiff's commanding officer on October 31, 1994, and by the Bureau of Naval Personnel on January 18, 1995. Plaintiff's release or End of Active Obligated Service ("EAOS") date also was amended from November 28, 1995, to October 31, 1995. Between January 18, 1995, and August 4, 1995, plaintiff completed the statutory prerequisites for transfer from active duty to Fleet Reserve status. On August 4, 1995, plaintiff received a copy of his final performance evaluation at a commemorative retirement ceremony held in his honor. Plaintiff also received a copy of self-executing orders authorizing his transfer to Fleet Reserve and a Certificate of Discharge from the Armed Services, both of which carried the effective date of October 31, 1995. Following the ceremony, plaintiff took 53 days accrued separation leave and began a career teaching at a California high school. The Navy arranged for plaintiff to be placed on Permissive Temporary Duty from the end of his accrued leave, September 25, 1995, until his discharge on October 31, 1995.

On October 11, 1995, while plaintiff was on Permissive Temporary Duty status, the Navy Criminal Investigative Service apprehended him in connection with the November 1989 death of a South Carolina woman. Plaintiff

was transferred from California to Florida on October 12, 1995, and placed in pretrial custody. In anticipation of plaintiff's apprehension, the Navy had terminated all of plaintiff's pay and allowances as of October 10, 1995. On October 16, 1995, the Navy placed plaintiff's status on "legal hold pending trial by general court martial." The Navy involuntarily extended plaintiff's discharge date on November 28, 1995, pending trial by court-martial. It did not, however, expressly revoke or otherwise rescind plaintiff's transfer to the Fleet Reserve.

On October 17, 1996, plaintiff pleaded guilty to charges of premeditated murder, weapons possession, and drug offenses. By general court-martial, plaintiff was sentenced to life confinement, forfeiture of all pay and allowances, a reduction in pay grade, and a dishonorable discharge. Pursuant to a pretrial agreement, plaintiff's confinement was reduced to 30 years. Plaintiff then was transferred from Florida to a long-term confinement facility in South Carolina.

Plaintiff appealed his conviction, arguing ineffective post-trial assistance of counsel. The U.S. Navy–Marine Corps Court of Criminal Appeals ruled for plaintiff and remanded the case for a new action. On May 31, 2001, by general court-martial, the 1996 conviction was withdrawn and a new sentence of 30 years' confinement was entered. The military judge also reduced plaintiff's pay grade, ordered him to forfeit all pay and allowances, and sentenced him to a dishonorable discharge. Plaintiff is now appealing that conviction.

In 1998 plaintiff brought a *Bivens* claim in the United States District Court for the District of Kansas, alleging that his constitutional rights were violated when officials at Ft. Leavenworth denied him prescribed heart medication.[1] The trial court dismissed his claim on the ground that plaintiff's damages while incarcerated arose "out of or in the course of activity incident to service" and were thus barred by *Feres v. United States,*

340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which recognizes the Government's immunity from suits by or on behalf of servicemembers arising out of actions that occur during military service. *Paalan v. Nickels,* No. 99–3283, 2000 WL 177416, at *1, 2000 U.S.App. LEXIS 2341, at *2 (10th Cir. Feb. 16, 2000). On appeal the Tenth Circuit rejected plaintiff's argument that his active duty ended upon delivery of his certificate of discharge, thereby invalidating the subsequent involuntary extension of plaintiff's service. *Paalan v. Nickels,* 17 Fed.Appx. 930, 931–32 (10th Cir.2001). According to the court, neither the delivery of the certificate of discharge nor the granting of plaintiff's terminal leave operated to accelerate plaintiff's EAOS date. The court concluded that the imposition of "legal hold" status on October 16, 1995, "effectively preserved the status quo from that date until November 28, 1995, [plaintiff's] scheduled EAOS." *Id.* at 933. Because plaintiff was not actually discharged on November 28, 1995, the court reasoned that he was on active military duty at the time of his injuries. Thus, the court concluded that the *Feres* doctrine barred his claim for compensation. *Id.* at 933.

Plaintiff now sues in the Court of Federal Claims. His five-count amended complaint is a challenge to comprehend, but appears to allege that (1) plaintiff statutorily is entitled to back pay by virtue of his status as a member of the Fleet Reserve; (2) plaintiff is entitled to back pay under the U.S. Constitution because his continuing service in the Navy is tantamount to an involuntary servitude in contravention of the Thirteenth Amendment; (3) plaintiff contractually is entitled to back pay by the terms of a pretrial agreement; (4) plaintiff is entitled to back pay under the U.S. Constitution and governing laws and regulations by virtue of his current illegal and wrongful confinement; and (5) plaintiff is entitled to compensation for a government taking of certain personal property.[2]

---

1. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 395, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), recognized a constitutional claims based on the Fourth Amend-

ment for actions of state officials acting under order of law.

2. The complaint lacked any ascertainable basis for a takings claim. On October 10, 2001, plain-

Defendant moves to dismiss plaintiff's claims for a wrongful confinement and for a taking for lack of jurisdiction under RCFC 12(b)(1) and plaintiff's claims for back pay for failure to state a claim upon which relief can be granted under RCFC 12(b)(4). In turn, plaintiff moves for summary judgment, also moving to compel production of various documents and service regulations, including the Navy's litigation report.

## DISCUSSION

### 1. *Standards for motion to dismiss*

When a federal court reviews the sufficiency of the complaint, whether on the ground of lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted, "its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* To this end, the court must accept as true the facts alleged in the complaint, *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988), and must construe such facts in the light most favorable to the pleader, *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (court obligated "to draw all reasonable inferences in plaintiff's favor"). The burden of proving that the Court of Federal Claims has subject matter jurisdiction over a claim rests with the party seeking to invoke its jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds,* 846 F.2d at 748. At the pleading stage, general factual allegations may suffice to meet this burden, for on a motion to dismiss the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l*

*Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

It is well-settled doctrine that a complaint will not be dismissed for lack of subject matter jurisdiction or for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Therefore, when the facts alleged in the complaint "reveal any possible basis on which the non-movant might prevail, the motion must be denied." *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988).

Briefs filed by *pro se* litigants are held to a less stringent standard than formal briefs filed by attorneys. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Nevertheless, the leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements. *Kelley v. Sec., United States Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir. 1987). *Pro se* litigants are not immune from laws and rules of procedure simply on the basis of their *pro se* status. *See, e.g., Constant v. United States,* 929 F.2d 654 (Fed.Cir. 1991).

### 2. *Transfer to Fleet Reserve*

Plaintiff predicates his first four causes of action on the premise that, on October 31, 1995, he was transferred to Fleet Reserve and is therefore entitled to retainer pay under 10 U.S.C. § 6330, entitled *Enlisted members: transfer to Fleet Reserve and Fleet Marine Corps Reserve; retainer pay.* Section 6331(c)(1) provides:

Each member who is transferred to the Fleet Reserve or the Fleet Marine Corps Reserve under this section is entitled,

tiff filed "Plaintiff's Motion for a Joinder of Claims, and Corrections to Original Claim of Statute Relied and Relief Sought," in which he attempted to clarify the relief sought in his complaint. Plaintiff elaborates that he requests an order directing correction of his military records to read that he was involuntarily extended, rather than retained on active duty, and awarding him compensation related to his takings claim in the amount of $25,000.00. Plaintiff attaches to the motion records itemizing his personal prop-

erty, as well as correspondence documenting his efforts to locate it. Defendant maintains, and the court agrees, that plaintiff's motion should be considered an amended complaint filed pursuant to RCFC 15(a) (allowing for amendment of complaint as matter of course). Because plaintiff did not restate the allegations of his complaint in that motion, the court treats the motion as incorporating by reference the allegations in the original complaint.

when not on active duty, to retainer pay computed under section 6333 of this title. Naval personnel are eligible to transfer to Fleet Reserve under this section if they have completed 20 or more years of active service. *Id.* § 6330(b). It is undisputed that plaintiff completed the statutory prerequisites for transfer from active duty to Fleet Reserve status and that, on August 4, 1995, plaintiff received self-executing orders authorizing his transfer to Fleet Reserve and a Certificate of Discharge from the Armed Services, both of which carried the effective date of October 31, 1995. It is also undisputed that on October 16, 1995, before this effective date, the Navy placed plaintiff's status on "legal hold pending trial by general court martial" and that on November 28, 1995, the Navy involuntarily extended plaintiff's discharge date.

The Tenth Circuit held in *Paalan* that the imposition of legal hold status over plaintiff on October 16, 1995, negated the command intent to discharge plaintiff on October 31, 1995. 17 Fed.Appx. at 932–33. Indeed, even the fact that the Navy allowed plaintiff to take terminal leave prior to his scheduled separation date was insufficient to accelerate plaintiff's discharge date. *Id.* at 932. Because plaintiff otherwise had not been discharged, the Tenth Circuit concluded that plaintiff remained on active duty while incarcerated. *Id.* at 933.

■ Defendant invokes the doctrine of issue preclusion to argue that the court must honor the Tenth Circuit's determination that plaintiff is an active-duty member of the armed services. This doctrine renders conclusive in a subsequent suit involving the parties to the prior litigation issues that actually and necessarily have been determined by a court of competent jurisdiction. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Mother's Restaurant Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983). Issue preclusion applies where (1) the issues to be concluded are identical to those involved in the prior action; (2) those issues were raised and "actually litigated"; (3) the determination of those issues in the prior action was necessary and essential to the resulting judgment; and (4) the party precluded was fully

represented in the prior action. *Mother's Restaurant*, 723 F.2d at 1569. If these elements are met, so-called "defensive collateral estoppel" precludes plaintiff from raising the issue of his military status, even though the Government was not the defendant in the prior case. *See Parklane*, 439 U.S. at 329, 99 S.Ct. 645 ("Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.' ").

■ No question is presented that the issue of whether plaintiff was discharged from the Navy is the same issue presented to the Tenth Circuit, nor does plaintiff argue that he lacked adequate representation before that tribunal. *Cf. Moss v. Dep't of Air Force*, 82 M.S.P.R. 309, 314 (1999) (*pro se* status does not prevent application of collateral estoppel). That the issue of whether plaintiff was on active duty was necessary and essential to the resulting judgment is evidenced by the fact that, before it could determine whether the *Feres* doctrine applied, the Tenth Circuit remanded to the United States District Court of Kansas for a determination of plaintiff's military status. *See Paalan*, 2000 WL 177416, at *1, 2000 U.S.App. LEXIS 2341, at *4–*6. Thus, the doctrine of issue preclusion prevents this court from finding that plaintiff was transferred to the Fleet Reserve.

■ Regardless of the preclusive effect of the Tenth Circuit decision, the court readily would rule that plaintiff could not state a claim for military pay based on his status as a member of the Fleet Reserve. Transfer to the Fleet Reserve is discretionary. 10 U.S.C. § 6330(b). Although a fully executed retirement order is generally final, *cf. Cedillo v. United States*, 124 F.3d 1266, 1267 (Fed.Cir.1997) (explaining circumstances whereby even final order may be rescinded), the Navy rescinded plaintiff's retirement order before it became fully executed. First, the Navy placed a legal hold on plaintiff, which is a form of pretrial restraint that "does not equate to an arrest or restricted status." *United States v. Bush*, 49 C.M.R.

97, 99, 1974 WL 14014 (1974).[3] The imposition of a legal hold prevents the servicemember from being transferred from his current duty status to assure his availability at some future date. *United States v. Clay*, 48 C.M.R. 334, 337, 1973 WL 14935 (1973) (explaining widespread use of the legal hold). Then, on November 28, 1995, the Navy involuntarily extended plaintiff's service, pursuant to regulations that provide:

> Members may be extended involuntarily beyond their EAOS as a result of apprehension, arrest, confinement, investigation or filing of charges that may result in a trial by court-martial and the execution of any sentence thereof. If such action is initiated with a view to trial because of an offense under the UCMJ committed by a member prior to their official discharge or separation, even though the term of enlistment or obligated service may have expired, they may be retained in the service for trial and punishment after their period of service would otherwise have expired.

United States Dept. of Navy, Naval Military Personnel Manual, ¶ 1050155(1)(h) (1995). Finally, under Rule 202(c)(1) of the Manual for Courts–Martial, once court-martial jurisdiction attaches to a member of the armed services, "the servicemember may be held on active duty over objection pending disposition of any offense for which held." This rule was designed to implement Article 2(a)(1) of the Uniform Code of Military Justice (the "UCMJ"), 10 U.S.C. § 802 (2000), granting the armed forces jurisdiction over military personnel "awaiting discharge after expiration of their terms of enlistment" or otherwise not on active duty but not yet discharged. Of more importance, the statute expressly allows for the involuntary extension of a servicemember's active duty for purposes of investigation or court-martial. *Id.*

The court would thus conclude, as the Tenth Circuit did, that the imposition of the legal hold and the subsequent involuntary extension of plaintiff's term of service evidenced a command intent not to transfer plaintiff to Fleet Reserve.[4] Significantly, this decision lay within the Navy's discretion. *See Allen v. Steele*, 759 F.2d 1469, 1471 (9th Cir.1985) (under court-martial provisions, armed services may supersede even self-executing discharge orders).

Defendant's motion to dismiss plaintiff's claim for retainer pay for failure to state a claim is granted. Consequently, plaintiff's claim that he is entitled to correction of his military records and/or his placement into Fleet Reserve at this time is dismissed. Moreover, because he is not entitled to retainer pay, plaintiff is not entitled to "penalty interest," as defined and authorized by 31 U.S.C. § 3902 (1994 & Supp. V 1999), for the failure of the Navy timely to render him such pay, and this claim is dismissed, as well.

### 3. *Entitlement to back pay as an active-duty servicemember*

■ Plaintiff claims entitlement to military pay on account of his status as an active-duty member of the armed services. A servicemember's entitlement to pay is statutory, not contractual. *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). By statute, servicemembers on active-duty status are entitled to the basic pay of the pay grade to which they are assigned. 37 U.S.C. § 204(a)(1). Nothing in the statute prohibits a servicemember who has been extended involuntarily to secure court-martial jurisdiction from receiving basic pay, and

---

**3.** The court rejects plaintiff's contention that whether the status of "legal hold" exists is an issue in this case.

**4.** Plaintiff alleges that, as of August 4, 1995, the Navy withheld certain mandatory deductions from his paycheck and that this withholding is material to his claim that he was transferred to Fleet Reserve. He contends that such withholding is consistent with the Navy's Enlisted Transfer Manual and seems to offer this argument either to negate a conclusion that the Navy entertained a command intent to keep him on active duty, or as evidence that he was transferred to Fleet Reserve because the Navy "failed to employ the proper procedures to rescind or revoke Citizen Paalan's transfer." Pl.'s Br. filed Jan. 15, 2002, at 4, ¶ 8. However, the Navy's actions and intent prior to plaintiff's apprehension on October 12, 1995, are legally insufficient to establish a transfer. As discussed above, the Navy's actions after that date evidence an intent not to transfer plaintiff to Fleet Reserve, and its actions successfully rescinded such transfer.

defendant does not now argue that plaintiff is so precluded. *See Dock v. United States,* 46 F.3d 1083, 1089 (Fed.Cir.1995); *Graham v. United States,* 36 Fed.Cl. 430, 432 (1996) ("[I]t is the norm rather than the exception for soldiers assigned to active duty to accrue pay during military confinement.").

▆ Nevertheless, where applicable, the Department of Defense Military Pay and Allowances Manual (the "DODPM") supplants the Navy's liability to pay active-duty servicemembers. *Dock,* 46 F.3d at 1091–92. DODPM § 10317(d) provides: "If a member is confined awaiting court-martial trial when the enlistment expires, pay and allowances end on the date the enlistment expires. If a member is acquitted when tried, pay and allowances accrue until discharge." This provision entitles an incarcerated servicemember to receive pay until the end of his enlistment contract, regardless of the ultimate disposition of the case. *Graham,* 36 Fed.Cl. at 432–33 (section 10317(d) "does not interfere with the right of a soldier on active duty, prior to such expiration, to receive pay for the periods during which the soldier is confined in prison and unable to perform ordinary, full-duty functions"); *see also Scarseth v. United States,* 46 Fed.Cl. 406, 411–12 & n. 2 (2000) (reserving for trial amount of pay owed incarcerated servicemember who resigned before contractual discharge date).

### 1) *Extension of enlistment contract*

▆ Although plaintiff's pleadings and his briefs are particularly difficult to discern on this point, it appears to be plaintiff's position that the parties to the court-martial understood that plaintiff's contractual enlistment would extend past November 28, 1995. In his original complaint, plaintiff asserts that the court-martial authority understood the involuntary extension to be an extension of plaintiff's enlistment contract and thus understood that plaintiff would receive "active-duty" pays and allowances. He submits portions of the trial transcript, in which the military judge instructs defense counsel to ensure that the original charge sheet reflects the involuntarily extension, "[w]hether it is a two-year extension, whatever it was initially, notwithstanding any legal hold extension." Later, defense counsel attempts "to offer the court the extension to the contract, the enlistment contract," and the judge refers to "a severance issue."

These statements, however, do not even support an inference that plaintiff's enlistment contract was extended beyond the November 28, 1995 discharge date.[5] The court cannot divine a right to receive pay from statements, provided out of context, discussing only the involuntary extension of plaintiff's military status. Nor can the above statements support an inference that plaintiff's continued pay was an implied condition of the settlement or of plaintiff's sentence. As entered by the military judge, plaintiff's sentence included forfeiture of all pays and allowances. This sentence negates any inference that the judge, to the extent that he may have believed plaintiff's contract was being extended, ruled that plaintiff thereby was entitled to pay while incarcerated. To the extent that defense counsel's statement can be construed as an assertion that plaintiff's contract was being extended, it is of no moment. In the absence of a statutory provision to the contrary, defense counsel's incorrect statement regarding a contract extension could not bind the Government to pay money to plaintiff. *Cf. Dock,* 46 F.3d at 1093.

### 2) *Conversion of motion to dismiss into motion for summary judgment*

Defendant next submits plaintiff's pay records to show that plaintiff actually was paid

---

5. To the extent that plaintiff's briefs suggest that continued pay was an element of his settlement agreement, that argument must fail. Plaintiff's amended complaint states only that the reduction of sentence from life imprisonment to 30 years' confinement constituted the express settlement agreement. Of equal importance, plaintiff does not allege that defense counsel induced him to enter a guilty plea with promises of a contract extension or of the payment of retainer or active duty pay. *See, e.g., Sanders v. United States,* 252 F.3d 1329, 1335 (Fed.Cir.2001); *see also Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

for his service until November 28, 1995.[6] These pay records are outside the pleadings and go to the merits of plaintiff's claim. According to RCFC 12(b), if on a motion "to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." The rule requires the court to afford plaintiff notice and a reasonable opportunity to present all material pertinent to such a motion. *See generally Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1572 (Fed.Cir.1997); *Advanced Cardiovascular Sys. v. SciMed Life Sys.*, 988 F.2d 1157, 1164–65 (Fed.Cir.1993). Notice may be actual or constructive, and the notice requirement is satisfied when the non-moving party knows that it must come forward with all its evidence. *Athridge v. Rivas*, 141 F.3d 357, 361 (D.C.Cir.1998); *see also Nichols v. United States*, 796 F.2d 361, 364 (10th Cir.1986) (submission of evidentiary materials by movant, non-movant, or both may itself constitute sufficient notice). Similarly, the requirement of a reasonable opportunity to respond goes to the non-movant's ability to conduct discovery and/or develop arguments in opposition. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Dunkin' Donuts of Amer., Inc. v. Metallurgical Exoproducts Corp.*, 840 F.2d 917, 919 (Fed.Cir. 1988).

Plaintiff had ample reason to know that the court would consider his pay records until November 28, 1995. Before he even filed the instant complaint, the Tenth Circuit had made it a matter of public record that plaintiff had been paid past this date. In addition, defendant attached plaintiff's pay records to its motion to dismiss before plaintiff himself moved for summary judgment. In his own motion, plaintiff attached additional pay records, as well as a Social Security statement chronicling these payments. By leave of court, he additionally filed a "traverse" in support of his motion and has twice requested discovery of his military pay

records from October 1975 to May 31, 1995 only. Finally, plaintiff filed a statement of genuine issues that includes the issue of whether plaintiff has been paid up until his discharge date, defendant responded, and plaintiff has replied. Although defendant should have brought a motion for summary judgment on this aspect of plaintiff's claim, the court's *sua sponte* conversion of defendant's motion to dismiss into one for summary judgment has not deprived plaintiff of notice or an opportunity to respond as required by RCFC 12(b).

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). The moving party bears the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Despite these records, it is unclear whether plaintiff actually received pay until November 28, 1995, or whether he now seeks such payment. In his complaint plaintiff alleges all pay terminated on October 10, 1995. Yet, in his motion for summary judgment, plaintiff expressly seeks as relief the restoration of basic pays and allowances only for the period beginning April 15, 1996. In his reply brief, plaintiff poses as an issue whether he is entitled to either retainer pay or basic pay and allowances for the period of "01–27 November 1995." Pl.'s Br. filed Feb. 8, 2002, at 9, ¶ 18. Reviewing the documents submitted by the parties, and construing the facts in the light most favorable to plaintiff, *see H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences, and intendments"), the court finds that the pleadings support an allegation that plaintiff was not paid for his service up to November 28, 1995. The court takes notice of a memorandum dated January 13, 1999, written by the General Counsel of the Defense Finance and Accounting Service in response to plaintiff's

---

**6.** According to defendant, the records show that plaintiff was paid by the Navy until April 15, 1996, affording plaintiff with approximately $11,000.00 more than that to which he was entitled. *See also Paalan*, 17 Fed.Appx. at 932–33 (discussing payments made to plaintiff posted in October, November, and December 1995 and January 1996).

request that he review plaintiff's military status and entitlement to pay for the period October 11, 1995, to October 4, 1996. This memorandum is attached to both defendant's motion to dismiss and plaintiff's original complaint. The memorandum indicates that plaintiff's pay was terminated on the date that he was apprehended, October 11, 1995. The general counsel states that plaintiff was entitled to pay until his discharge date, and opines that it is not clear why his pay was suspended earlier.[7] The pay records submitted by defendant show they were generated in November 1995, but contain no indication that plaintiff received the funds, nor show that the funds were transferred via direct deposit, for example, so as to support constructive receipt.

A genuine issue of material fact therefore exists as to whether plaintiff was paid for his service up until his contractual discharge date of November 28, 1995. For this reason, defendant's motion to dismiss is denied, as is plaintiff's motion for summary judgment, to the extent that plaintiff may intend to predicate his motion on the failure of the Navy to pay his active-duty pay up to November 28, 1995.

Plaintiff's claim to military pay accrued after November 28, 1995, must be dismissed as premature. Forfeiture of pay can only be imposed by the lawful sentence of a court-martial. 10 U.S.C. § 858b; *Bell*, 366 U.S. at 401–02, 81 S.Ct. 1230. Moreover, by the terms of the DODPM, plaintiff's entitlement to pay and allowances depends upon his res-

toration to full duty status. *Dock*, 46 F.3d at 1093. Because the Navy's ultimate liability to pay plaintiff after his contractual discharge date depends exclusively on the outcome of his appeals, and because those appeals are not concluded, defendant's motion to dismiss plaintiff's claim for active-duty pay accrued after November 28, 1995, is granted.

### 4. *Entitlement to compensation by virtue of confinement*

Plaintiff offers a menu of theories that he believes entitle him to compensation for his confinement. These theories appear to originate from the reasoning that, should the court find plaintiff statutorily ineligible for military pay, he is entitled to compensation for his pre-and post-trial detention. Plaintiff's first assertion appears to be that, if he is not in the Fleet Reserve or on active duty, then he has been subjected to involuntarily servitude in contravention of the Thirteenth Amendment. As discussed above, plaintiff is on active duty. Involuntary active duty does not violate the Constitution. *Selective Draft Law Cases*, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918); *United States v. Fallon*, 407 F.2d 621, 623–24 (7th Cir.1969).[8]

Plaintiff's additional claims, all of which challenge the underlying lawfulness of his court-martial conviction, also must be dismissed as premature. The Court of Federal Claims has jurisdiction to render judgment for cases of unjust conviction. 28 U.S.C. § 1495 (1994). However, to recover compen-

---

7. From the memorandum, it appears that plaintiff's claim may implicate 10 U.S.C. § 858b (2000), which the general counsel describes as a "mandatory forfeiture statute." A June 12, 1998 *memorandum from the Defense Finance and Accounting Service* and submitted by plaintiff instructs that statutory amendments allowing for the automatic forfeiture of pay apply only to offenses committed on or after April 1, 1996. It also mandates that "[i]f a member has been court-martialed solely for offenses committed before April 1, 1996, any automatic forfeitures imposed against the member's pay should be removed." Plaintiff's filings do not illuminate the circumstances of his pay while incarcerated. Although he submits this document, it is unclear whether he means to offer the automatic forfeiture provision in response to defendant's contention that plaintiff actually had been paid or solely to support his claim for retainer pay.

8. Plaintiff responds that, contrary to the clear language of his complaint, he does not seek pay by terms of the Fifth or Thirteenth Amendment, but, rather, bases his claim on the fact that military retirement pay is "property" and that because the court-martial is not a court established under Article 3 of the Constitution it does not have the authority to deprive a servicemember of that property. Plaintiff apparently believes that he has a constitutional claim to retainer pay. As discussed above, however, military personnel's rights to pay are purely statutory. Whether a servicemember is entitled to compensation and how much should be paid for compulsory service are not constitutional issues. *Hurtado v. United States*, 410 U.S. 578, 588–89, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973).

sation for unjust conviction in the Court of Federal Claims, a servicemember must allege that the conviction has been reversed or otherwise set aside and that he did not commit the offense and the prosecution was not brought about by his own misconduct or neglect. 28 U.S.C. § 2513 (1994). Plaintiff alleges neither. Moreover, for military pay claims, reimbursement for pay withheld under an illegal sentence of court-martial, as authorized by the Department of Defense Financial Management Regulation, Vol. 7A, Chapter 48, § 4810, necessarily requires an initial finding that the court-martial sentence was erroneous. Defendant's motion to dismiss plaintiff's claims to compensation for his confinement for lack of jurisdiction is granted.

### 5. Taking

■ Plaintiff alleges the " 'illegal taking' of his personal property without 'due process' of law in violation of the Fifth Amendment of the Constitution of the United States." Amended Compl., ¶ 7(3). In order properly to allege a claim for a taking in violation of the Fifth Amendment, a claimant must show that the Government appropriated plaintiff's property without just compensation. *Short v. United States*, 50 F.3d 994, 1000 (Fed.Cir. 1995). The Government appropriates property for purposes of a taking when it does so by express or implicit authority; otherwise, the appropriation is the *ultra vires* act of a government official and liability does not impute to the Government. *Del–Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed.Cir.1998); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed. Cir.1993). Moreover, "challenges to the propriety of the lawfulness of government actions sound in tort." *Bernaugh v. United States*, 38 Fed.Cl. 538, 542 (1997), *aff'd* 168 F.3d 1319, 1998 WL 537723 (Fed.Cir.1998) (unpublished table decision). This is the rationale for requiring that a "claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act." *Tabb Lakes*, 10 F.3d at 802.

Defendant seizes upon plaintiff's use of the term "illegal," arguing that because plaintiff asserts an unauthorized government action, he has not asserted a taking, but a conversion over which the court lacks jurisdiction. The dispositive issue in a takings claim, however, is not whether the Government's conduct was legal—rather, whether it was authorized. *Del–Rio*, 146 F.3d at 1362–65 ("Neither the Supreme Court nor this court has held that government conduct is 'unauthorized,' for purposes of takings law, merely because the conduct would have been found legally erroneous if it had been challenged in court."). Plaintiff concedes the fact that the Government lawfully took his property, explaining that his choice of the word "illegal" represented merely "an emotional out cry [sic] for the 'taking' of his personal property rather than an objective and accurate description of the defendant's 'taking' of his personal property." Pl.'s Br. filed Dec. 4, 2001, at 19. Mindful that complaints filed by *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines*, 404 U.S. at 520, 92 S.Ct. 594; *accord Roche v. USPS*, 828 F.2d 1555, 1558 (Fed.Cir.1987), the court carefully has read the complaint and reviewed the documents attached to it and finds that, other than using the term "illegal," plaintiff has pleaded facts sufficient to support the court's jurisdiction over a claim for a taking.

Plaintiff alleges that he was apprehended for investigation and court-martial pursuant to the statutory provisions for military justice and the Judge Advocate General Manual, subsection 0123, "Exercise of Court–Martial Jurisdiction over Retired, Reserve, Fleet Reserve, Fleet Marine Corps Reserve and Discharged Personnel." Compl. filed Aug. 1, 2001, ¶ 25. Nonetheless, he does not elaborate on the circumstances of the seizure of his property, other than to attach documents. Those documents itemize personal effects ostensibly seized from plaintiff at the time of plaintiff's apprehension, including a gun, ammunition, and a cellular telephone; property confiscated and inventoried pursuant to plaintiff's transfer into custody, including clothing, accessories, documents, and credit cards on plaintiff's person and miscellaneous items in plaintiff's vehicle; and property confiscated and inventoried from plaintiff's Navy quarters in Jacksonville, FL. These facts suf-

ficiently illuminate the nature of plaintiff's contention; thus, despite the use of the word "illegal," the amended complaint concedes the lawfulness of the Government's appropriation of plaintiff's property.

Although the amended complaint alleges a taking, it does not elaborate on the theory by which plaintiff believes a taking has occurred. Plaintiff's cross-motion explains:

> Plaintiff does concede that, initially the defendant did lawfully seize Plaintiff's personal property for legitimate evidentiary purposes that, legitimate seizure after an approximately five-six years of possession by the defendant and the said personal property possessed absolutely no evidentiary value, as evidenced by the trial proceedings, coupled with the defendant ignoring all of Plaintiff's inquiries for the return of his said personal property now constitutes a "taking" without just compensation, warranting relief.

Pl.'s Br. filed Dec. 4, 2001, at 19. Defendant understands plaintiff to claim, and the court so understands plaintiff to argue, that plaintiff's property was seized as evidence and that plaintiff is entitled to compensation for the specified items of personal property because they no longer possess evidentiary value. The court also understands plaintiff to argue that his personal property lacks evidentiary value, in part, because it has been lost by the Government. In his reply brief, for example, plaintiff discusses the possibility of alternative dispute resolution "[i]f defendant can show that they are still in possession of those items in their 'safekeeping.' If the defendant cannot show possession then they certainly can't show possible evidentiary value." Pl.'s Br. filed Feb. 8, 2002, at 1. Moreover, the amended complaint includes a letter from the Inspector General of Ft. Leavenworth representing that plaintiff's personal property was not transported from Charleston, SC, to Ft. Leavenworth, and suggesting that plaintiff submit a claim to the Command Judge Advocate Office.

The Fifth Amendment to the United States Constitution mandates that no "private property be taken for public use, without just compensation." The determination of when the Government has taken private property "for public use" and when a property owner is entitled to "just compensation" is a factual and difficult one. *See generally Penn. Cent. Transp. Co. v. New York City,* 438 U.S. 104, 123–128, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (reviewing factors shaping Fifth Amendment takings jurisprudence); *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983) (explaining that "the law of just compensation is hardly a matter of clarity"), *rev'd on other grounds sub nom. Yuba Natural Resources, Inc. v. United States,* 821 F.2d 638 (Fed.Cir.1987). Nevertheless, "[s]ummary dismissal of a taking claim is appropriate where the circumstances alleged in the complaint, even if taken as true and all reasonable inferences are drawn in favor of the plaintiff, cannot establish that a taking has occurred." *Atlas Corp. v. United States,* 895 F.2d 745, 757 (Fed.Cir. 1990).

■ Defendant argues that claims for personal property brought by servicemembers against the Government must be brought under the Military Claims Act, 10 U.S.C. §§ 2731–2739 (2000) (the "MCA"). Section 2733 of the MCA provides:

> (a) Under such regulations as the Secretary concerned may prescribe, he, or, subject to appeal to him, the Judge Advocate General of an armed force under his jurisdiction, or the chief Counsel of the Coast Guard, as appropriate, if designated by him, may settle, and pay in an amount not more than $100,000, a claim against the United States for—
>
> ⋯
>
> (2) damage to or loss of personal property, including property bailed to the United States ...
>
> ⋯
>
> either caused by a civilian officer or employee of that department, or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, acting within the scope of his employment, or otherwise incident to noncombat activities of that department, or the Coast Guard.

According to the MCA's finality provision, section 2735, the settlement of a claim under this provision is "final and conclusive."

Defendant touts the MCA as providing the "exclusive" remedy for servicemembers who have lost personal property to the Government. *Collins v. United States,* 67 F.3d 284 (Fed.Cir.1995), is the centerpiece of defendant's argument. The Federal Circuit in *Collins* stated it was "convinced that when Congress included the finality provision in the Military Claims Act it intended that army claims would be considered and disposed of by the army and not the courts." *Id.* at 287. Instead of holding that the MCA's finality provision rendered the MCA the exclusive remedy for a servicemember's property claims, the court held that the finality provision contained in section 2735 precluded judicial review of a military decision to disallow a claim brought under the MCA. *Id.* at 287–88; *see also Minns v. United States,* 155 F.3d 445, 453 (4th Cir.1998) (explaining that all circuits interpreting MCA have adopted this holding). It also held that the Tucker Act does not confer the Court of Federal Claims with jurisdiction over an MCA claim, because the MCA is not a money-mandating statute. *Collins,* 67 F.3d at 286. The Federal Circuit apparently has not had the opportunity to rule on whether the MCA also provides an exclusive remedy, although it has held that the MCA is not exclusive to the extent that the Court of Federal Claims has jurisdiction over a claim that the military's denial of a claim violated the Constitution, *id.* at 288, and over a claim that a military agency breached an agreement to pay an MCA claim, *Massie v. United States,* 166 F.3d 1184, 1188 (Fed.Cir.1999).[9]

Those courts that have addressed the issue universally have held that the MCA is not an exclusive remedy—all reasoning that because the MCA is considered a remedy of "last resort" and because it does not contain language of exclusivity, a servicemember plaintiff may bring a claim for loss of personal property in federal court, so long as the federal court action is not based on the MCA, but upon another applicable statute or basis for jurisdiction. *United States v. Gaidys,* 194 F.2d 762, 764 (10th Cir.1952); *United States v. Huff,* 165 F.2d 720, 725–26 (5th Cir.1948); *Miller v. Auto Craft Shop,* 13 F.Supp.2d 1220, 1225 (M.D.Ala.1997); *Hass v. United States Air Force,* 848 F.Supp. 926, 933 n. 6 (D.Kan.1994); *Bryson v. United States,* 463 F.Supp. 908, 910 (E.D.Pa.1978), *Lundeen v. Dept. of Labor and Indus.,* 78 Wash.2d 66, 469 P.2d 886, 890 (1970). The court considers this reasoning persuasive. Plaintiff does not purport to bring a claim under the MCA, nor has he already pursued one with the Navy. Moreover, nothing in *Collins,* or any other MCA case, purports to place limits upon a claim for a taking in contravention of the Fifth Amendment.

The issue devolves to whether plaintiff properly has pleaded a claim for a taking under the Fifth Amendment. The Supreme Court instructs the court broadly to examine (1) the character of the Government's action; (2) its economic impact; and (3) its interference with the plaintiff's reasonable investment-backed expectations. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984); *see also Good v. United States,* 189 F.3d 1355, 1360 (Fed.Cir. 1999), *cert. denied* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). Whether the

**9.** Although not cited by defendant, the court notes that in *Shull v. United States,* 229 Ct.Cl. 766, 768 (1982), the United States Court of Claims did state:

> Assuming, *arguendo,* that plaintiff has a claim under the Military Claims Act against the Government on the basis of his active duty service and his civilian employment, the act, as we have said before, clearly provides for an exclusive remedy and, as such, this court lacks jurisdiction over the claim. *See* order of July 10, 1981.

The order referenced, however, had held that the court lacked jurisdiction over plaintiff's claim for lost mail brought under Army regulations, them-

selves modeled on the MCA, because plaintiff had already presented a claim to the Army and review therefore was barred by the finality provision. *Shull v. United States,* 228 Ct.Cl. 750, 761–63 (1981); *see also Collins,* 67 F.3d at 287 (citing *Shull* for the proposition that MCA's finality provision bars judicial review of claims already presented to military agency). That the Court of Claims did not lay down a rule of law concerning the exclusivity of the MCA is evidenced by the fact that, despite the numerous MCA cases brought in the federal courts since 1982, not one has cited *Shull* or the Court of Claims for the proposition that the MCA is an exclusive remedy.

character of the Government's conduct amounts to the appropriation of private property for "public use" is often framed as the distinction between the compensable exercise of the Government's power of eminent domain to benefit the public and the non-compensable exercise of its police power to protect the public. *E.g., Bennis v. Michigan,* 516 U.S. 442, 452–53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996); *B & F Trawlers, Inc. v. United States,* 27 Fed.Cl. 299, 305 (1992).

■ The fact that the Government legally may have taken plaintiff's property as evidence, but then lost it, does not state a claim for a taking, because the Government thereby does not take property for public use. *See Columbia Basin Orchard v. United States,* 132 Ct.Cl. 445, 450, 132 F.Supp. 707, 709 (1955) (explaining that indirect or consequential injury cannot support taking because Government lacks intent to put property to public use); *see also Lucien v. Johnson,* 61 F.3d 573, 575–76 (7th Cir.1995) (claim for loss of prisoner's mail due to prison administration's negligence not claim for taking). In the Court of Federal Claims, moreover, if the property was lost due to the Government's tortious conduct, the court lacks jurisdiction over the claim. 28 U.S.C. § 1491(a)(1). *But see Kosak v. United States,* 465 U.S. 848, 860 n. 22, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) (addressing claim under Federal Tort Claims Act, but leaving open possibility that lost property can be recovered under theory of breach of implied contract for bailment). Therefore, to the extent plaintiff predicates his Fifth Amendment claim upon the alleged loss of his personal property, defendant's motion to dismiss for failure to state a claim is granted.

■ Plaintiff does not dispute that the Government may seize evidence for use in criminal investigations and for trial and that such possession alone does not constitute a taking. *Cf. Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 306, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Porter v. United States,* 473 F.2d 1329, 1335–36 (5th Cir.1973). Plaintiff's claim appears to be predicated on the theory that the Government's continued possession of his personal property amounts to a taking because the Government's interest in

the property is stale. This allegation might support a claim for unreasonable seizure under the Fourth Amendment or a claim for a violation of the Due Process Clause. *See Martin v. Rodriguez,* 154 F.Supp.2d 306, 314–16 (D.Conn.2001) (discussing application of Fourth and Fourteenth Amendments to claims for property properly seized); *see also United States v. Johnson,* 2 C.M.R. 644, 647, 1951 WL 2276 (1951) (explaining that, unless specifically limited, constitutional search and seizure and due process protections apply to military personnel).

Whether and when a proper search and seizure becomes a compensable taking under the Fifth Amendment is not definite, but the court cannot say as a matter of law that plaintiff cannot state a claim for a taking on this theory. *See Bowman v. United States,* 35 Fed.Cl. 397, 406 (1996) ("In cases where property is determined to have been improperly forfeited because it is found that it was not used for illicit purposes, it would seem that a property owner legitimately may harbor an expectation of compensability." (citing *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–86, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974))); *Interstate Cigar Co. v. United States,* 32 Fed.Cl. 66, 70–71 (1994) (no taking occurred when Government properly seized medicines from third party as evidence and medicines expired while in Government's possession because plaintiff failed to establish value of medicines); *Froudi v. United States,* 22 Cl.Ct. 290, 297–98 (1991) (taking claim for automobile seized by DEA dismissed as premature when automobile was central to allegation of illicit activity and appellate process not completed); *see also United States v. Premises Known as 608 Taylor Ave., Apt. 302, Pittsburgh, Pa.,* 584 F.2d 1297, 1303 (3d Cir.1978) ("Even prior to trial, the government's decision to hold an item might not be reasonably related to the needs of investigation or trial."); *Silva v. United States,* 51 Fed.Cl. 374, 379 (2002) (plaintiff's claim that taking occurred when exotic birds seized by warrant dismissed because not raised in prior district court proceeding).

■ Not challenging the proposition that the Government's continued holding of

stale evidence is government conduct that can support a takings claim, defendant disputes whether plaintiff can harbor a reasonable expectation of constitutionally mandated compensation for the items seized. Defendant argues, correctly, that, as a matter of law, criminal defendants cannot hold such expectations in the instrumentalities of the crime, which defendant identifies as plaintiff's pistol and ammunition. *See C.J. Hendry Co. v. Moore*, 318 U.S. 133, 137–38, 63 S.Ct. 499, 87 L.Ed. 663 (1943) (explaining long legal history of *in rem* forfeiture of properties used in violation of the criminal law); *Bowman*, 35 Fed.Cl. at 406 ("Plaintiff's knowledge and participation in the illicit use of his property necessarily precludes any expectation of compensability ...."). Plaintiff poses no challenge to the use of these items in his criminal proceeding. The court cannot, therefore, adjudicate plaintiff's takings claim as to these items at this time because his reasonable expectation depends on whether the items are adjudicated to be instrumentalities of a crime. Plaintiff's court-martial is still on direct review before an appellate body, and two additional levels of direct review remain available to him. *See* 10 U.S.C. §§ 866–867(a) (2000). If plaintiff's conviction is upheld and it is found that the gun and ammunition were used in the commission of his crime, the gun and ammunition constitute instrumentalities of a crime over which plaintiff can harbor no constitutionally protected property interest. *See Bowman*, 35 Fed.Cl. at 406; *Froudi*, 22 Cl.Ct. at 297. If acquitted, plaintiff reasonably can expect either their return or compensation for their loss unless the Government successfully condemns the property under an appropriate forfeiture statute. *United States v. Real Property Located at Section 18*, 976 F.2d 515 (9th Cir.1992); *Lowther v. United States*, 480 F.2d 1031, 1034 (10th Cir.1973).

▮ Defendant makes no argument that the remainder of plaintiff's personal property constitutes instrumentalities of a crime to which plaintiff could have no expectation of privacy and/or compensation.[10] In his reply brief, plaintiff elaborates that "[p]laintiff without reservation disagrees with the defendant's claims that his personal property held for 'safekeeping' falls within the purview of public-safety, or that of his clothes acquired years after the alleged crimes occurred are of an instrumentality to warrant a 'taking.'" Pl.'s Br. filed Feb. 8, 2002, at 1. The court concurs. Construing all facts in the light most favorable to plaintiff, the court rules that, as pleaded, plaintiff has established his reasonable expectation of compensation for these personal effects. The court underscores that this conclusion does not represent an extension of takings jurisprudence to a new category of property interest, but follows because defendant has failed to challenge the merits of either plaintiff's allegation that all of plaintiff's personal property was seized as evidence or plaintiff's theory that the Government's retention of stale evidence constitutes a taking.

Defendant's motion to dismiss plaintiff's takings claim for failure to state a claim is granted as to plaintiff's claim for compensation for his gun and ammunition and otherwise denied. A genuine issue of material fact exists as to the circumstances of and regulations behind the confiscation of plaintiff's property.[11] Plaintiff's motion for sum-

10. The court deems it highly unlikely that all of plaintiff's property, particularly the property confiscated from his naval quarters days after his arrest, was confiscated as evidence. Under the circumstances it seems probable that most of the property was taken pursuant to Naval regulations and inventory searches for purposes of securing the property during plaintiff's confinement. A plaintiff cannot state a takings claim for property the use of which has been lawfully restricted through normal administrative processes. *Crocker v. United States*, 37 Fed.Cl. 191, 195 (1997); *LaChance v. United States*, 15 Cl.Ct. 127, 130 (1988); *see also Savko v. Rollins*, 749 F.Supp. 1403, 1412–13 (D.Md.1990). Furthermore, it appears that at least some of this proper-

ty is government property, issued to plaintiff by the Navy. Defendant, however, does not challenge plaintiff's characterization of the confiscation of property, and the court therefore must accept as true the allegation that plaintiff's property was confiscated and is being held as evidence.

11. In plaintiff's words, "there exists a genuine material fact issues in 'dispute,' as to whether the defendant employed the proper procedure, pursuant to Government Regulations to inventory and withhold Citizen Paalan's personal property for 'safekeeping,' after it was determined that no evidentiary existed." Pl.'s Br. filed Jan. 15, 2002, at 6, ¶ 10.

mary judgment on his takings claim therefore is denied.

### 6. *Discovery*

With his motion for summary judgment, plaintiff moves for discovery seeking production of defendant's litigation report, a readable copy of Attachment 15 to his motion, and the "Government Regulation which explains the code meanings for same." Pl.'s Br. filed Dec. 4, 2001, at 10. Plaintiff is not entitled automatically to the Government's, or any other, litigation report because such reports are protected by the attorney-client privilege and such privilege applies to communications within a government agency or between the agency and the Department of Justice. *Cities Serv. Helex, Inc. v. United States*, 216 Ct.Cl. 470, 476, 1978 WL 8445 (1978) (en banc); *see also Amer. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed.Cir.1987). Plaintiff does not assert a substantial need for the litigation report, nor does the court ascertain such need. *See* RCFC 26(a)(2). Plaintiff's Attachment 15 is a poor copy of an "Agreement to Extend Enlistment Operative or Cancelled." Handwritten on the document are a number and the words "Fleet Reserve." Because this court joins the Tenth Circuit in concluding the issue of plaintiff's military status, discovery of this document, and the meaning of the codes contained within it, has been mooted.

With the filing of a "traverse," plaintiff seeks copies of service regulations going to the nature of a "legal hold," payroll deductions for individuals on Fleet Reserve status, his military pay records, and his certificate of discharge and self-executing orders delivered August 4, 1995. The information in these documents goes to plaintiff's claim for military retainer pay, and the court has granted defendant's motion to dismiss plaintiff's claim for such pay. As to plaintiff's request that the court query the Tenth Circuit as to whether it considered plaintiff's transfer or withholding status, such a request is both inappropriate and beyond the court's power.

### CONCLUSION

Because defendant's motion to dismiss is granted only in part, plaintiff's claims survive, as follows: (1) whether plaintiff received military pay pursuant to 37 U.S.C. § 204(a)(1) and DODPM § 10317(d) between October 11, 1995, and November 28, 1995; and (2) whether the Government's continued retention of plaintiff's personal property, with the exception of his gun and ammunition, constitutes a compensable taking under the Fifth Amendment. Plaintiff will limit future discovery and briefing to these issues. Plaintiff must follow the rules governing the formatting and submission of documents to the court as prescribed in RCFC 7–16. The court will no longer indulge the filing of extraneous and/or overlong briefs and requests.

Before subjecting the parties to another round of briefs on the legal technicalities of plaintiff's claims, defendant shall facilitate the timely resolution of plaintiff's claims by producing documents to establish (1) whether plaintiff actually was paid for his service between October 11, 1995, and November 28, 1995; and (2) the statutory and/or regulatory basis for the seizure of plaintiff's property. If those documents show that plaintiff cannot prevail on either of his two remaining claims, then plaintiff should consent to dismissal of his suit. If the facts show otherwise, the parties are urged to so tailor their filings. Accordingly,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss is granted as to plaintiff's claims for military pay accrued after November 28, 1995.

2. Defendant's motion to dismiss is denied as to plaintiff's claim for military pay accrued before November 28, 1995.

3. Defendant's motion to dismiss plaintiff's takings claims is granted in part and denied in part, consistent with the foregoing.

4. Plaintiff's motion for summary judgment is denied.

5. Plaintiff's motion for discovery is granted to the extent that by March 29, 2002, defendant shall produce documents, other than those heretofore produced, showing that plaintiff received pay between October 11, 1995, and November 28, 1995, and documents showing the statutory and/or regulatory ba-

sis for the confiscation of plaintiff's property, and is otherwise denied.

6. By April 15, 2002, the parties shall file a Joint Status Report proposing a course of proceedings to resolve plaintiff's remaining claims.

