"This matter comes before the court on defendant’s interlocutory request for review of Trial Judge Spector’s orders of January 27, 1977, and February 3, 1977, denying in part, and sustaining in part, defendant’s asserted executive privilege, attorney-client privilege, and attorney work-product privilege in several documents sought to be discovered by plaintiff. The basic dispute involves the termination of plaintiffs long-term helium contract with the Federal Government. For the history of the underlying controversy, see Cities Service Helex, Inc. v. United States, 211 Ct. Cl. 222, 543 F.2d 1306 (1976); Northern Helex Co. v. United States, 197 Ct. Cl. 118, 455 F.2d 546 (1972), and 207 Ct. Cl. 862, 524 F.2d 707 (1975), cert. denied, 429 U.S. 866 (1976).
"This Cities Service Helex case is still in its pre-trial stage. Plaintiff sought production of all relevant documents in defendant’s custody relating to the establishment and funding of the helium conservation program, the termination notice issued by Under Secretary Russell on January 26, 1971, the Government’s failure to pay for helium deliveries subsequent to June 30, 1972, and the termination notice issued by Secretary Morton on February 2, 1973. The trial judge first granted the motion to produce in its entirety. Defendant filed a motion for reconsideration which was denied, as was a second motion for reconsideration. Defendant then filed a motion to modify the trial judge’s order to produce, asserting that a large number of the documents involved were exempt from discovery under either executive privilege or attorney-client or work-product privilege. The trial 'judge ordered defendant to produce the allegedly privileged documents for his in camera inspection; following this inspection, he issued an order on January 27, 1977, on defendant’s claim of attorney-client or work-product privilege, which granted defendant’s motion in large part but ordering the production of all or part of twelve of the forty-two documents for *472 which defendant had asserted the privilege. On February 3, 1977, the trial judge issued a second order, this one on defendant’s claim of executive privilege, and again granted defendant’s motion in large part but ordering disclosure of all or part of twenty-two of the fifty-four documents for which defendant had claimed the privilege. Plaintiff, which, of course, has not seen the documents, accepts the trial judge’s characterization of their contents and the results of his orders. Defendant, which does know the contents of the documents, has appealed both orders insofar as they direct production of documents (or parts of documents).[1]
"We have heard oral argument en banc on this request for review and, after argument, have examined in camera the documents which the trial judge ordered produced in whole or in part.[2] In this order we give our rulings on the two classes of documents for which privilege is claimed— attorney-client and/or work-product privilege, and executive privilege.
I.

Preliminary Considerations

"A. Our study of the problems posed by the request for review has taken account of a number of factors special to these helium cases.
"First, Cities Service Helex, Inc., supra, 211 Ct. Cl. 222, 543 F.2d 1306, held that Under Secretary Russell’s termination of January 1971 has now only a secondary importance (we ruled there that Secretary Morton’s 1973 termination is the only operative one for this case) and that the earlier termination is relevant only insofar as it bears on the Morton termination. Most of the documents ordered by Trial Judge Spector to be produced pre-date the Russell *473 termination. We think that materials relating to the Russell termination still have some significance in the case, at this discovery stage, and therefore that plaintiff should not be entirely precluded, on the ground that only the Morton termination remains important, from receiving them. On the other hand, the secondary position of the Russell termination has led us, in deciding which of the pre-Russell documents should be produced, to note, among other factors, the closeness of the date and contents of the document to the Russell termination, as well as the cumulative or duplicative nature of the document.
"Second, it is clear, from what we know of this case, that plaintiff wishes to prove that the President or the Bureau of the Budget ordered or directed Under Secretary Russell (and/or Secretary Morton) to terminate the contract against their own views and that of their immediate advisers. Without, of course, passing at all on that ultimate question, we see that this is not at all a frivolous position and that plaintiff definitely has need of government documents if it is to hope to prove that proposition and the subsidiary propositions leading to it. In our Northern Helex order, supra, we directed production of documents which included 'orders or directives to the Secretary of the Interior to terminate plaintiffs contract.’ The fuller development since that order of the 'need’ exception to the privileges with which we are now concerned (see, e.g., Sun Oil Co. v. United States, 206 Ct. Cl. 742, 514 F.2d 1020 (1975)) teaches us that plaintiffs need should not be restricted to express orders or directives to Under Secretary Russell (or to Secretary Morton), but should also cover documents revealing circumstances from which it could reasonably (even though not necessarily) be inferred or learned that such an order or directive was given by the President or the Budget Bureau, expressly or impliedly. Such an order or directive, or comparable compulsion, could be proved by circumstantial evidence, as well as by a direct written or oral pronouncement. However, in view of the secondary role of the Russell termination and the presumption in favor of the privileges where they exist, plaintiff is not entitled, on the basis of need, to every scrap of paper with some conceivable bearing on the Russell termination. There is a substantial element of judgment involved, and we have exercised our best judgment, giving due deference to the trial judge’s rulings.
*474 "The third element — closely connected with the two factors already discussed — is that plaintiff already has had access to a substantial body of government documents bearing on the helium controversy (in general) and the Russell termination (in particular). An exception to the privileges because of need must take account of the materials the plaintiff already has. The more the litigant already knows the less the need for essentially cumulative or duplicative documents. As noted above, plaintiff cannot expect to receive, and is not entitled to receive on the ground of need, every privileged word, sentence, or paragraph with some conceivable bearing on the Russell termination.
"Fourth, when Trial Judge Spector considered the defendant’s motion he had before him only claims of executive privilege by officers of the previous national administration (Secretary of Interior and Director of the Office of Management and Budget). We considered it pertinent to know whether the comparable officers of the current national administration took the same position. Therefore, the court (in its order of December 9, 1977, after the oral argument, suspended proceedings for thirty days to allow defendant the opportunity to obtain and file claims of executive privilege by the current heads of those agencies. The Government did file such claims on January 9, 1978; the current incumbents reasserted executive privilege as to all documents as to which defendant has sought review. Accordingly, we put aside the possibility of discounting claims of executive privilege made only by a prior administration and not supported by the current administration. Cf. Nixon v. Administrator of General Services, 433 U.S. 425, 448-49 (1977).
"B. In addition, it is well to note, as applicable to both the executive and attorney privileges, that we have followed the traditional practice of ordering production of parts of documents where that method seemed called for by application of the privilege to privileged parts only, or (where the privilege exists) to satisfy plaintiffs need without going beyond true need, or to avoid cumulation or duplication. In doing so, however, we have sought not to mislead the parties (especially plaintiff) by wrenching words or portions of a document out of significant context; we have included other portions of the paper which we *475 believe necessary to avoid a misleading impression. For many documents it is impossible, following the applicable principles, to classify the text as privileged as a whole or not privileged as a whole, or as needed as a whole or not needed as a whole. In those instances we have resorted to the accepted practice of careful and meaningful excision, trying to obtain a fair disclosure but one still within the general framework of the privilege.
II.

Documents As to Which Defendant Asserts Attorney-Client and/or Work Product Privilege

"A. We have applied the following general rules, in passing on the producibility of this type of document:
"1. The attorney-client privilege pertains only to confidential communications by the client to the attorney (whether incorporated into a communication by the client to the attorney or vice versa or by the attorney to a third party) for the purpose of obtaining legal advice or help from the attorney as such.
"2. Attorney-client material is producible if the client’s communication is for the purpose of obtaining help in committing a crime, fraudulent act, illegality, or tort.
"3. It is not necessary to decide in this case whether 'mental impressions, conclusions, opinions or legal theories of an attorney’ (see F.R. Civ. P. 26(b)(3)) — insofar as incorporated in or revealed by attorney-client communications — are ever producible on the ground of need.
"4. It is likewise unnecessary to decide in this case whether any type or types of 'facts’ revealed by an otherwise privileged attorney-client communication are producible on the ground of need in civil litigation against the Government.
"5. Work product material (as distinguished from attorney-client communications) is privileged only where it was prepared for, or in anticipation of, the same general litigation in which the privilege is sought.
"6. Work product material is not producible insofar as it contains the attorney’s 'mental impressions, conclusion, opinions or legal theories’ (F.R. Civ. P. 26(b)(3)) — except in the case of the clearest need.
"7. Work product material (i.e. material not within the attorney-client privilege) containing 'facts’ is producible *476 upon a showing of 'substantial need’ (see F.R. Civ. P. 26(b)(3)).
"B. In the case of the Government, it is not always easy to tell who play the roles of attorney and client, but, in general, (1) The Department of Justice is the attorney vis-a-vis the operating agencies involved in the particular litigation or transaction-to-be-litigated; (2) the general counsel or solicitor of the operating agency is the attorney vis-a-vis the non-lawyer officials of that agency involved in the matter or transaction; and (3) often, agency counsel participate with the Department of Justice in the carrying on of litigation (e.g. in litigation reports, preparation of briefs, etc.) and in that capacity can act as attorneys producing attorneys’ work-product.
"A legal memorandum sent by the attorney for one agency to another agency (in order to inform or influence the receiving agency) is not deprived of a privilege it would otherwise have — unless the memorandum or its contents are intended or expected to become public. This accords with the general principle that confidential, attorney-type, privileged communications retain their privileged character so long as they are intended and expected to remain confidential.
"C. Our rulings on the documents as to which Trial Judge Spector denied the attorney-client and work-product privileges and therefore ordered production (see pp. 3-5 of his order of January 27, 1977) are as follows:[3]
[Here follows a listing of documents]
III.
Documents As to Which Defendant Asserts Executive Privilege
"A. In passing on the defendant’s claims of executive privilege, we have applied the settled rules for that privilege (see the order of June 30, 1972, in Northern Helex v. United States, supra) in the light of the considerations set forth in Parts IA and IB of this order, supra.
"B. Our rulings on the documents as to which Trial Judge Spector denied executive privilege and therefore ordered production (see pp. 4-7 of his order of February 3, 1977) are as follows:[4]
*477 [Here follows a listing of documents]
"Accordingly, the defendant’s request for review is granted, and the trial judge’s two orders of January 27 and February 3, 1977, are modified as indicated supra in Parts II and III of this order.
"It IS SO ORDERED.”

 Defendant excludes from its request for review, a few documents designated in footnote 1 of its request for review (p. 2). The present order does not, and is not intended to, deny production of any of the documents (or parts of documents) thus excluded from defendant’s request for review.

 It is pertinent to note (in connection with our decision to hear this matter en banc and to inspect the documents for ourselves), first, that the court en banc had earlier issued (198 Ct.Cl. 996 (1972)) an order on a comparable motion to produce documents in Northern Helex Co. v. United States, No. 454-70, and, second, that Trial Judge Schwartz, in the companion case of National Helium Corp. v. United States, No. 158-75, had issued orders (May 26, 1976; July 9, 1976) denying discovery of several of the documents ordered produced by Trial Judge Spector in this case. Trial Judge Schwartz followed the standards laid down in our Northern Helex order supra.

 Our rulings allowing or denying the claim of privilege relate to the particular parts of the documents ordered produced by the trial judge. In a few instances we order other parts of the same document (not ordered produced by the trial judge) to be produced — in that event we so indicate.

 As with the attorney-client and work-product privileges, our rulings allowing or *477 denying a claim of executive privilege relate to the particular parts of the documents ordered produced by the trial judge. Where other parts of the same document (not ordered produced by the trial judge) are to be produced under this order, we so indicate.