The matter now before us concerns still another facet of pre-trial discovery in these "helium” cases. See Cities Service Helex, Inc. v. United States, 216 Ct. Cl. 470 (1978). Cities Service Helex, Inc. v. United States, 211 Ct. Cl. 222, 545 F. 2d 1306 (1976). On January 7, 1977, Trial Judge Spector entered orders in these two cases, denying motions of former President Nixon for protective orders precluding discovery of materials relating to these cases which might be found in the Nixon presidential files. Movant Richard Nixon sought review of that order. The court has withheld determination of that request for review until the Supreme Court’s decision in Nixon v. Administrator of General Services, 433 U.S. 425 (1977), and until after some further *645 proceedings in the District Court for the District of Columbia in that Nixon case and its sequelae. In this order we now dispose of Mr. Nixon’s request for review.[1]
I.
The present controversy concerns only those materials relating to this "helium” litigation which may be found in President Nixon’s presidential records; those records are now in the custody of the General Services Administration, pursuant to the Presidential Recordings and Materials Preservation Act, 44 U.S.C. § 2107. The validity of that Act was upheld, in general, against various claims of unconstitutionality in Nixon v. Administrator of General Services, supra, and the Act was recently invoked by the Supreme Court in Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978).
Regulations have been issued by GSA governing access to the Nixon presidential papers. 41 C.F.R. § 105-63.000 et seq., especially § 105-63.303. See Nixon v. Warner Communications, supra, 435 U.S. at 604-606, fn. 16. The final portion of these regulations became effective in December 1977. 42 Fed. Reg. 63626. See Nixon v. Sampson, D.C. Circuit, Nos. 75-2194, 75-2195, 75-2196 (decided March 22, 1978), slip op., pp. 3-4. Parts of the regulations have been challenged by Mr. Nixon in the District Court for the District of Columbia, Nixon v. Solomon, D.D.C., No. 77-1395. Enforcement and application of the regulations has not, however, been enjoined or stayed; and we are informed that the National Archives and Records Service of GSA has conducted searches of the Nixon presidential materials— under the provisions of its regulations and procedures, and pursuant to legal process — in at least two pending civil actions. Mr. Nixon’s representative participated with respect to those searches.
II.
We think this general procedure should be followed in the present cases even though the validity of every aspect of the pertinent regulations and GSA procedures may not yet be definitively settled. These twin "helium” cases have already been in the pre-trial stage for quite some time. Moreover, as pointed out in our recent order of April 27, 1978 in Cities Service Helex, 216 Ct. Cl. 470, it is clearly *646 pertinent to these litigations to find out whether the Nixon records contain materials relating to the Russell and Morton helium-contract terminations which should be produced to plaintiffs. We think this can now be done with adequate protection for the rights of Mr. Nixon and of the parties to the suits.
III.
We therefore direct that discovery with respect to the Nixon records, sought by plaintiffs, shall proceed as follows:
1. A search should be made as soon as practicable, under the pertinent GSA regulations and procedures, for any papers or materials relating to or bearing upon the "helium problem,” particularly centering on the Russell termination of January 1971 and the Morton termination of February 1973 (effective April 4, 1973).[2] The search will be made by GSA archivists. Mr. Nixon or his agent will have a right to be present. The plaintiffs will have no right to be present at this search stage; nor will the defendant have such a right unless the GSA archivists need Department of Justice personnel to aid in the search.
2. If any materials pertinent to the subject matter stated in paragraph 1, supra, are located by the archivists, they shall be made available for review both to Mr. Nixon (or his representative) and to the Department of Justice, for the purpose in each case of deciding whether to object to their production to plaintiffs (on the grounds of relevance, of executive privilege, or otherwise). Any such objections shall be stated in writing and with as much specificity as is possible without revealing the materials.[3]
3. Any materials to the production of which neither Mr. Nixon nor the Department of Justice objects shall be produced to plaintiffs.
4. Any materials to the production of which either Mr. Nixon or the Department of Justice objects shall be produced to the trial judge in camera and shall be examined by him in camera to determine whether they *647 should be produced to plaintiffs.[4] Without reviewing the materials the plaintiffs shall have the right to respond to any objections made by Mr. Nixon or the defendant.
5. In determining in camera whether these materials or any of them should be produced to plaintiffs the trial judge shall follow (to the extent pertinent) the considerations set forth in the order of April 27, 1978 in Cities Service Helex, supra.
6. All parties and Mr. Nixon shall have the right to request review by the court of the trial judge’s determination to the extent adverse to the contentions of the party requesting review.
Accordingly, Mr. Nixon’s request for review of the trial judge’s orders of January 7, 1977 is granted, and the foregoing order is substituted for the orders of the trial judge.[5]
On July 7, 1978 the court denied President Nixon’s motion for reconsideration or clarification of the foregoing order.

 We have not deemed oral argument to be necessary or advisable.

 Defendant’s Answers to Plaintiffs’ First Interrogatories (served on January 9, 1978) indicate, in particular, that John Ehrlichman’s files for 1970-1973 should be searched — in addition to the Central Files and Special Files.

 We assume that none of the materials located by the archivists will implicate the national security but if any do the GSA procedure appears to provide for that contingency and the Department of Justice can indicate that that particular privilege has been invoked.

 We believe that, properly understood, the GSA regulations and procedures do not preclude production to the court in camera of any materials other than national security materials.

 The procedure directed by our order does not appear to differ very much from the procedure apparently contemplated by the trial judge’s order.