NORTHROP GRUMMAN CORPO-
RATION Military Aircraft Di-
vision, Plaintiff,

v.

UNITED STATES, Defendant.

No. 96–760C.

United States Court of Federal Claims.

March 4, 2008.

Joseph F. Coyne, Jr., Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, California, for the plaintiff. Of counsel, Michelle Sherman, Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, California; Jeffrey N. Eisenstein, Richard B. Clifford, Jr., and Allen Cannon, III, Perkins Coie, LLP, Washington, D.C.; Joseph O. Costello, Deputy General Counsel, Northrop Grumman Corporation, Los Angeles, California.

Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for the defendant. With her were Jeanne E. Davidson, Director, and Phyllis Jo Baunach, Trial Attorney, Commercial Litigation Branch. Of counsel, Lieutenant Colonel Jennifer Grimm, Department of the Air Force, Washington, D.C.

## ORDER

HORN, Judge.

The parties have been engaged in very extensive discovery, including extensive document exchanges. The court is in receipt of plaintiff's motion to compel production of documents based on an alleged waiver of privilege by defendant. The parties provided written briefs on the issue, and oral argument was held. Plaintiff argues that defendant waived its privilege by voluntarily and intentionally producing 300 Claim Research Papers, such that over 1400 [1] other privileged documents, never before challenged and not produced, but, allegedly, concerning the same subject matter, also must now be produced. Plaintiff further seeks the production of 15 documents inadvertently produced by defendant, along with millions of pages in the parties' electronic exchange of documents, which 15 documents defendant claims are

---

1. Recently the parties have agreed, after discussion, that the number is approximately 1000 additional documents.

privileged under the work-product doctrine and attorney-client privilege. The basis for the plaintiff's claim to these 15 documents is the same waiver of privilege argument, that the 15 documents contain the same subject matter as the intentionally produced Claim Research Papers and that, therefore, defendant waived its privilege regarding those 15 documents.

Defendant responds that the produced Claim Research Papers were created primarily for use by the contracting officer in preparing his final decision on Northrop's consolidated claim, so that the Claim Research Papers were not privileged. Therefore, according to the defendant, there was no waiver of privilege by the voluntary release of the Claim Research Papers to the plaintiff, nor was the privilege waived as to the approximately 1000 documents on related subject matters or the 15 documents.

Plaintiff provided the court with 43 representative Claim Research Papers, contained in appendices supporting its motion to compel production. There was no objection from either party for the court to use only these representative Claim Research Papers for purposes of the court's ruling on the plaintiff's motion to compel production. The approximately 300, intentionally produced Claim Research Papers were created by the government between January and November, 1996. The context and time line for the creation of the Claim Research Papers is outlined briefly below. On February 10, 1995, the government announced plans to terminate the TSSAM contract for the convenience of the government. On May 25, 1995, the government formally terminated the TSSAM contract for the convenience of the government. Northrop Grumman submitted a certified consolidated claim to the contracting officer dated January 8, 1996. The Claim Research Papers analyzing the contractor's claims were created between January and November, 1996. The contracting officer's final decision was issued November 26, 1996. Northrop Grumman filed its original complaint[2] in this court on December 2, 1996.

Plaintiff relies heavily on a case issued by a judge of the United States Court of Federal Claims, *Blue Lake Forest Products, Inc.*, in support of its motion to compel. The *Blue Lake* case dealt with a question of waiver, as follows:

> By voluntarily filing the Brouha Memorandum in the Administrative Record of another lawsuit, the Government waived its attorney-client privilege for this document and all communications on the same subject matter. It is settled in this Circuit that a voluntary, intentional waiver of the attorney-client privilege applies to all other communications relating to the same subject matter. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir.2005); *see also Genentech, Inc. [v. U.S. Int'l Trade Comm'n,]* 122 F.3d [1409,] 1416 [(Fed.Cir.1997)]; *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1275 (Fed.Cir.2001). As the Federal Circuit has explained:
>
>> Once the attorney-client privilege has been waived, the privilege is generally lost for all purposes and in all forums. Professor Rice[3] explains the scope of a waiver of the attorney-client privilege as follows: When the attorney-client privilege has been waived, whatever the subject matter of the waiver, the privilege is gone.
>
> *Genentech*, 122 F.3d at 1416. However, "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Fort James*, 412 F.3d at 1349–50 (citing *In re Keeper of the Records XYZ Corps.[Corp.]*, 348 F.3d 16, 23 (1st Cir.2003)).

*Blue Lake Forest Prods. v. United States*, 75 Fed.Cl. 779, 793 (2007) (footnote omitted).

The above-noted Brouha Memorandum had been disclosed in other litigation by the

---

**2.** Plaintiff's third amended complaint, the current complaint, was filed on February 23, 2007.

**3.** Paul R. Rice, *Attorney–Client Privilege in the United States*, § 985 at 9–295 (1993) (cited in *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d at 1415).

government, nonetheless, in the *Blue Lake* case, the government claimed that the Brouha Memorandum was subject to the attorney-client privilege. *Id.* at 786. Once the plaintiff in *Blue Lake* suggested that the earlier voluntary disclosure of the Brouha Memorandum in the other litigation resulted in a waiver of all privileged information on the same subject matter, the government attempted, without success, to reverse itself and claim that the Memorandum had not been privileged in the first place, so as to avoid disclosure of additional documents on the same subject matter. *Id.* The *Blue Lake* court concluded that the Brouha Memorandum was privileged, the privilege had been waived through disclosure of the Memorandum in the other litigation and, therefore, not only the Memorandum itself, but all other communications involving the same subject matter must be disclosed. *Id.* at 794–95, 798–99.

The *Blue Lake* decision, however, does not assist plaintiff in this case. In the first place, the Brouha Memorandum was prepared during litigation and was titled "Lawsuit on Northwest Forest Plan and Implementation of Survey and Manage [sic]," and was addressed to several senior department officials, including "Al Ferlo, Counselor to the Chief, Forest Service," who was an attorney. *Id.* at 787. Moreover, in the present case, the government did not engage in the egregious conduct described in *Blue Lake* of disclosing documents in an earlier case, and subsequently trying to assert a privilege to prevent disclosure of the same documents in a later case. Instead, the government in the present case voluntarily and properly produced the Claim Research Papers to Northrop Grumman when the government identified the Claim Research Papers as having been prepared primarily by technical and program personnel, primarily to aid the contracting officer to prepare a contracting officer's final decision, and no litigation had been initiated at the time. Instead of penalizing cooperation and voluntary release of documents by a party to facilitate litigation, release of documents, which even late in the process are found by the custodial party not to be privileged, should be encouraged.

To confuse matters, however, the produced Claim Research Papers were stamped as "produced in direct or indirect anticipation of litigation pursuant to the direction of the government attorney." According to both parties, the stamp may have been affixed to the documents prior to the issuance of the contracting officer's final decision, although the parties have not been able to provide the court with an actual date of when the stamp was placed on the documents. In addition, the record suggests that a program attorney may have been involved to an undetermined extent with developing the Claim Research Process. Initially, the Claim Research Papers also were placed on a government privilege log.

Defendant nevertheless states that the Claim Research Papers were created primarily by the technical staff for use by the contracting officer to prepare his final decision on Northrop Grumman's consolidated claim to the agency. The agency contracting officer, Robert G. Beecraft, Jr., provided the court with a declaration, which stated that he "was involved in developing the claim research process that was used to obtain information for my final decision in TSSAM," which he further stated, included "gather[ing] technical/program management input. . . ." The contracting officer's declaration continued, that he had received the claims analysis information, and "relied upon this technical information for preparation of the final decision." In addition, he declared that he also remembered that, at the time, he was aware of efforts by the plaintiff and defendant "to resolve the contract without resort to litigation. . . ."

Counsel for the defendant states that during an RCFC 30(b)(6) deposition in April, 2003, it was first learned that the papers were prepared, not for litigation, but for the contracting officer prior to his issuing a final decision. The defendant states, in its filing with this court: "We produced copies of the Claim Research Papers to Northrop once we learned that they had been prepared for use by the contracting officer because Northrop is entitled to documents that could have been used by the contracting officer in preparing his final decision."

Each of the Claim Research Papers also contain a subsection titled "Discovery Documents." A template prepared to develop the Claim Research Process provided in the discovery subsection that: "This section is a list of any documents that were germane to your research but you could not find in the JSPO [Joint System Program Office]. This list will be the basis for any documents sought during discovery. It will also be used to search for documents at China Lake." "The Claim Research Process" outline prepared prior to initiation of the process stated: "The process starts with receipt of a claim and culminates in compilation of a master file document for use by the contracting officer in a final decision and any subsequent legal staff." In addition, the outline indicates that the Claim Research Papers "will be the key source of facts for the Contracting Officer to review in making the Contracting Officer's final decision and may be the corner stone for follow-on litigation should such be required." Defendant acknowledges some "dual use" of the Claim Research Papers, for both contract administration and possible litigation. Defendant, however, reiterates that the Claim Research Papers were "prepared principally for use by the contracting officer in preparing his final decision," that Northrop Grumman "is entitled to these documents that contain information underlying the final decision," and that the papers were not, therefore, privileged.

The work-product doctrine protects documents prepared in anticipation of litigation. *See Upjohn Co. v. United States*, 449 U.S. 383, 398, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("[Federal] Rule [of Civil Procedure] 26(b)(3) codifies the work-product doctrine," with the Rule discussing documents "prepared in an-

ticipation of litigation...."); *Deseret Mgmt. Corp. v. United States*, 76 Fed.Cl. 88, 92–94 (2007) (citing the court's counterpart RCFC 26(b)(3),[4] which similarly discusses documents "prepared in anticipation of litigation...."); *Pacific Gas and Elec. Co. v. United States*, 69 Fed.Cl. 784, 789 (2006). The court in *Pacific Gas and Electric* noted that there are "a variety of approaches" to determine whether a document was created in anticipation of litigation, the foundation for the work-product doctrine, rather than created in the ordinary course of business operations, or for other purposes. *Pacific Gas and Elec. Co. v. United States*, 69 Fed.Cl. at 790 (quoting *Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D.Ind.1991) (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.* 145 F.R.D. 84, 86 (N.D.Ill.1992))). Documents created for other purposes or created in the ordinary course of business, used or proven useful in later litigation, are not considered protected by the work-product doctrine. *Id.*

■ One approach to determining whether a document is protected by the work-product doctrine is to inquire into the "primary motivational purpose behind the creation of the document." *Id.* at 791 (citations omitted). Another approach is to inquire into whether a document was created because of anticipated litigation, and would not have been prepared, "but for the prospect of that litigation." *Id.* at 791 (citation omitted). Regardless, the court agrees with the statement in *Pacific Gas and Electric*, that "under either formulation, 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation'

---

**4.** Both Federal Rule of Civil Procedure 26(b)(3) and RCFC 26(b)(3) state that a party may obtain discovery of documents prepared in anticipation of litigation "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Plaintiff primarily relies on a waiver of privilege argument in support of its motion to compel production of documents. However, plaintiff does argue, in a short paragraph toward the end of its reply brief, that it "will suffer substantial prejudice if the Govern-

ment is permitted to selectively waive the privileges applicable to the Claims Papers and, then, refuse to produce documents that may contradict the Claims Papers on the ground that those documents are privileged." Plaintiff has enjoyed extensive discovery, including extensive document exchange. Plaintiff's claim of substantial prejudice is short, conclusory and unsubstantiated. Moreover, the court concludes below that the underlying basis for the plaintiff's motion, the alleged selective waiver of privilege, does not exist, because the produced Claim Research Papers were not privileged.

are not protected." *Id.* at 798 (quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998)).

█ In the instant case, the court finds that the papers were not created because of, or primarily in anticipation of litigation, and would have been prepared even in the ordinary course of business, and even if the agency and the contractor could have settled the case prior to litigation. Given the time frame of the creation of the Claim Research Papers, between receipt of Northrop Grumman's consolidated claim and the issuance of the contracting officer's final decision, as well as the actual use of the Claim Research Papers by the contracting officer, the court finds that the primary motivational purpose for the creation of the produced Claim Research Papers was for use by the contracting officer, as the title of the document suggests, to assist the contracting officer to review plaintiff's complex claims and to prepare his contracting officer's final decision. The court also finds that the produced Claim Research Papers would have been prepared for the contracting officer's use regardless of the prospect of litigation. Although contracting officers may be apprehensive of litigation, especially in a large contract such as this one, and a program attorney, Sandra Zimmerle, was apparently involved to some unknown extent in the development of the Claim Research Process, the hope always is to avoid litigation with a satisfactory resolution between the government and the contractor by the contracting officer. Moreover, the record reflects efforts to resolve the claims without resort to litigation.

Although the defendant has acknowledged some dual purpose if later litigation were to take place, the comprehensive discussion of "dual purpose" documents in *Pacific Gas and Electric,* 69 Fed.Cl. at 797–98, is instructive. The Claim Research Papers in the case before this court were primarily prepared to assist the contracting officer to analyze plaintiff's claims and to reach a contracting officer's final decision, and would have been prepared absent litigation. Plaintiff, therefore, has not demonstrated that the produced Claim Research Papers were prepared "in anticipation of litigation," as that term is understood, which is the threshold determination for establishment of the work-product

doctrine. *See id.* at 790. The court suggests that had the Claim Research Papers not been produced, plaintiff might otherwise be seeking them as critical to plaintiff's ability to understand the basis for and reasonableness of the contracting officer's decision.

Certainly, the stamp placed on the Claim Research Papers, "in direct or indirect anticipation of litigation," creates an additional issue for this court to consider. To date the parties have not been able to inform the court when that stamp was affixed to the representative documents, and although that information might assist the court, such information also would not resolve the issue. The term "in direct or indirect anticipation of litigation" is in and of itself confusing in the context of the case precedent. The phrase "indirect anticipation of litigation" is vague and should not be allowed to necessarily shield a document should litigation later ensue, if the primary purpose for a document's development was not litigation. To determine the nature of the document in the context of a waiver argument, the court's responsibility is to look at the essence of the document itself, and not be driven to conclusions merely by a stamp affixed to the document.

Nor does the attorney-client privilege assist plaintiff. The attorney-client privilege protects confidential communication by a client to an attorney in order to secure legal services. The attorney-client privilege "does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered." *Deseret Mgmt. Corp. v. United States,* 76 Fed.Cl. at 90 (citing *inter alia In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1037 (2d Cir.1984)) (other citations omitted). *See also Upjohn Co. v. United States,* 449 U.S. at 390, 101 S.Ct. 677 (The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.") (citations omitted); *Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed.Cir.1990) (en banc) ("Because the [attorney-client] privilege only protects communications made in confidence by clients to their lawyers for the purpose of obtaining legal advice, it is inapplicable

here.") (citation omitted); *Pacific Gas and Elec. Co. v. United States,* 69 Fed.Cl. at 810.

In contrast, the essence of the communication at issue in plaintiff's motion before the court involves Claim Research Papers, prepared during the ordinary course of business by technical/management, agency personnel primarily for the contracting officer to use in preparing a final decision on Northrop Grumman's consolidated claim. As a result, upon learning the true nature of the Claim Research Papers, the government produced the Claim Research Papers to the plaintiff, as the government correctly stated, "because Northrop is entitled to documents that could have been used by the contracting officer in preparing his final decision." The court does not find that the Claim Research Papers have protected status under the attorney-client privilege.

The above analysis applies equally to the basis for plaintiff's request for production of the 15 documents inadvertently disclosed by defendant during the parties' extensive document exchange. With respect to the 15 documents, plaintiff has not challenged the defendant's position that the 15 documents are privileged, and were inadvertently disclosed. Plaintiff, instead, argues that the claimed privilege for the 15 documents was waived by the production of the Claim Research Papers. The court, however, has concluded that the Claim Research Papers were not prepared primarily in anticipation of litigation, rather they were prepared primarily for use by the contracting officer to assist in arriving at a contracting officer's final decision. Because the court concludes that the Claim Research Papers were not privileged, the production of the Claim Research papers by the defendant did not result in a subject matter waiver of privilege for the 15 documents.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to compel production of documents is denied.

**IT IS SO ORDERED.**

