**WESTON/BEAN JOINT VENTURE,**
Plaintiff,

v.

**The UNITED STATES of America, Defendant.**

**No. 11-31 C, No. 11-360 C**

United States Court of Federal Claims.

(Filed: June 16, 2014)

## ORDER

ELAINE D. KAPLAN, Judge, U.S. Court of Federal Claims

Pending before the Court are two motions in limine: one filed by the government objecting on the basis of the attorney-client privilege and the work product doctrine to plaintiff's use of various exhibits and the other filed by plaintiff, ("WB"), requesting in camera review of the exhibits at issue in the government's motion.

For the reasons set forth below, each party's motion in limine is **GRANTED IN PART** and **DENIED IN PART**.

### A. BACKGROUND

Weston/Bean Joint Venture ("WB") entered into a contract with the US Army Corps of Engineers ("the government" or "Corps") on April 29, 2004 to dredge the federal channel of the Miami River. Following performance of the contract, WBJV filed suit in this Court alleging that when it began to perform its work under the contract, the

---

1. The order refers to WB's exhibits by WB's revised exhibit numbers, as WB has done in its motion in limine requesting review under seal of

subsurface conditions it found were materially different from those indicated in the contracting documents. WB seeks an equitable adjustment of the contract amount, a time extension of 348 days, and $12,423,937.23 in damages, plus interest, costs, and attorney fees. Pl.'s Resp. 1-2.

Specifically, WB alleges that while the contract indicated that the sediments it would be required to dredge and process would consist of fine or coarse particles less than one to two inches in size, the actual sediments WB encountered contained significant amounts of large gravel, as well as cobbles and boulders. Compl. (No. 11-31) (hereinafter "Compl. 1") ¶¶ 67-73, 96-98; Pl.'s Resp. 9-11. It further claims that these allegedly unforeseeable conditions required it to incur significant excess costs related to the processing and disposal of the sediments. Compl. 1 ¶¶ 106-113, 116-119; Compl. (No. 11-360) (hereinafter "Compl. 2") ¶ 83; Pl.'s Resp. 11-13. WB also claims that certain work that the Army Corps of Engineers directed it to perform in connection with the project constituted a constructive change of the contract, that the government provided defective specifications for the project which resulted in damage to certain seawalls, that the government breached its implied duty to cooperate, that it unreasonably failed to grant extensions of time to complete the work, and that the government improperly retained or assessed liquidated damages. Compl. 1 ¶¶ 102-105, 118; Compl. 2 ¶¶ 70-74, 80, 102, 132-137; Pl.'s Resp. 11-75.

### B. DISCUSSION

In its motion in limine and supporting memorandum filed under seal, the government challenges the admissibility of PX 1261 [1], PX 1262, PX 1280, PX 1333, PX 1335, PX 1337, PX 1363, PX 1370, PX 1371, PX 1405, PX 1422, and PX 1423 on the basis of the work product doctrine; and PX 1338, PX 1339, PX 1406, and PX 1424 on the basis of both the work product doctrine and the attorney-client privilege. With the exception of

---

certain trial exhibits, filed on June 11, 2014, ECF No. 94.

PX 1424, these documents consist of email discussions between Corps personnel regarding the investigation and analyses of WB's administrative claims, draft versions of the Corps' technical analyses, draft letters by agency employees addressing WB's claims, and a summary of issues that were discussed both during and after a meeting between the Corps and WB in March 2010.

### 1. Work Product Doctrine

▇ Pursuant to the work product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." RCFC 26(b)(3)(A). The work product doctrine "promotes a fair and efficient adversarial system by protecting 'the attorney's thought processes and legal recommendations' from the prying eyes of his or her opponent." In re Echostar Commc'ns Corp., 448 F.3d 1294, 1301 (Fed.Cir.2006) (quoting Genentech, Inc. v. U.S. Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed.Cir.1997)). "The attorney work-product rule is indubitably applicable to government attorneys in litigation." Yankee Atomic Elec. Co. v. United States, 54 Fed.Cl. 306, 316 (2002) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 152, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

▇ "In order to qualify as work product, the material or report must come into existence because of the litigation or some articulable claim has arisen that is likely to lead to litigation." Caremark, Inc. v. Affiliated Computer Servs., Inc., 195 F.R.D. 610, 614 (N.D.Ill.2000); accord Hickman v. Taylor, 329 U.S. 495, 497, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (work product doctrine protects against the discovery of "oral and written statements of witnesses, or other information," produced "in the course of preparation for possible litigation after a claim has arisen."). "[M]aterials prepared in anticipation of litigation by any representative of the client are protected, regardless of whether the representative is acting for the lawyer." Caremark, 195 F.R.D. at 615; accord Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487, 502 (1970) ("Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf."). "Thus, whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." Caremark, 195 F.R.D. at 615.

▇ As the Second Circuit observed in United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir.1998), "the formulation of the work-product rule used by the Wright & Miller treatise, and cited by the Third, Fourth, Seventh, Eighth and D.C. Circuits, is that documents should be deemed prepared 'in anticipation of litigation,' and thus within the scope of [Rule 26(b)(3)], if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.' " (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024, at 343 (1994)) (emphasis added); see also Northrop Grumman Corp. v. United States, 80 Fed.Cl. 651, 654 (2008) (stating one approach to work product doctrine is whether or not the documents "would not have been prepared but for the prospect of litigation.") (internal citations omitted).

In Northrop, applying these standards, Judge Horn held that the work product doctrine did not apply to claim research papers prepared by the government to assist the contracting officer in analyzing plaintiff's administrative claims and reaching a contracting officer's final decision because the papers would have been prepared absent litigation. Northrop, 80 Fed.Cl. at 655. Similarly, in AAB Joint Venture v. United States, 75 Fed. Cl. 448, 455 (2007), Judge Damich rejected the government's invocation of the work product doctrine where the government did no more than show that the analysis and evaluation of plaintiff's REA claims were done under the guidance of attorneys from the office of counsel in order to assist the contracting officer in performing his contract administration duties.

■ The Court finds the reasoning in Northrop and AAB Joint Venture persuasive and applicable here. The challenged documents addressed to the validity of the plaintiff's administrative claims would have been created whether or not the claims ultimately ended up in litigation and so were not prepared "because of" anticipated litigation. Indeed, the government points out that the investigation itself was required by the Corps' regulations governing the consideration of administrative claims by the contracting officer. Thus, under the Engineer FAR Supplement (EFARS):

> A contract claim for which all certification requirements have been met shall be subject to a thorough fact finding investigation conducted by appropriate staff members, including an attorney from the Office of Counsel. During this investigation, the attorney will determine the scope of the review, evaluate the relevancy and materiality of the facts considered and take appropriate measures to preserve the documentation, including written statements and affidavits.

EFARS Appendix A, Part 3, A3-203(b) ("agency manual"), available at http://www.usace.army.mil/Portals/2/docS/EFARS.pdf. As noted in Wright & Miller, similar "statements or reports obtained about an event are often regarded as part of the general business activity" as opposed to being considered attorney work product, "particularly if they are required by some legal authority." 8 Federal Practice & Procedure § 2024.

The government argues that litigation was anticipated in this matter at the time that these documents were being generated as evidenced by the fact that counsel for the agency directed Corps employees to place litigation holds on documents on April 19, 2007. This contention does not persuade the Court that the work product doctrine is applicable. There is no doubt that a risk of litigation exists whenever an equitable adjustment that has been sought may be denied. Placing a litigation hold on documents in April 2007 was a prudent measure given the nature and size of the claims being asserted by WB. But it does not establish that the investigative documents generated would not have been created but for the prospect of future litigation.

■ In contrast, the Court concludes that PX 1424, a summary of the meeting between WB's attorneys and the Corps, is subject to the work product doctrine. The document is attached to an email dated December 20, 2011. The document itself is dated December 9, 2011. The meeting was held and the document was generated several months after the contracting officer issued its final decision in the matter. The email also refers to the then-existing litigation and was prepared for and at the request of a USACE attorney. Accordingly, the Court **GRANTS** the government's motion in limine as to PX 1424.

### 2. Attorney-Client Privilege

■ The attorney-client privilege protects "those attorney to client communications which would have a tendency to reveal the confidences of the client." Avgoustis v. Shinseki, 639 F.3d 1340, 1344 (Fed.Cir.2011) (quoting Kenneth S. Broun, McCormick on Evidence § 89 (6th ed. 2006)). "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." Genentech, 122 F.3d at 1415 (Fed.Cir. 1997); see also Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged."). "The [attorney-client] privilege applies to communications 'by the client to the attorney, whether incorporated into a communication by the client to the attorney or vice versa.'" Cencast Servs., L.P. v. United States, 91 Fed.Cl. 496, 502 (2010) (quoting Cities Serv. Helex, Inc. v. United States, 216 Ct.Cl. 470, 475 (1978) (en banc) (alteration omitted)). The privilege applies to attorney-to-client communications if they "reveal, directly or indirectly, the substance of any confidential communication" from the client. Cencast, 91 Fed.Cl. at 502 (quoting Am. Standard Inc. v. Pfizer Inc., 828 F.2d 734, 745 (Fed.Cir.1987). "The attorney-client privilege does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered."

Northrop, 80 Fed.Cl. at 655 (internal quotation omitted).

■■■■ The attorney-client privilege "encourag[es] full and frank communication between attorneys and their clients" and "recognizes that sound legal advice ... depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege "belongs to the client, who alone may waive it," In re Seagate Tech., LLC, 497 F.3d 1360, 1372 (Fed.Cir. 2007) (en banc), and "covers confidential communications from agency personnel to an agency attorney for the purpose of seeking legal advice." Cencast, 91 Fed.Cl. at 503; accord Deseret Mgmt. Corp. v. United States, 76 Fed.Cl. 88, 91 (2007) ("The attorney-client privilege applies not only to private individuals, but also to government employees. Communications by the Department of Justice to a client agency and by that agency's own attorneys to non-attorney personnel seeking or being provided with legal advice are entitled to protection under the attorney-client privilege.").

■■■■ To assert the privilege here, the government must show that the person to whom the communication was made is a lawyer acting in that capacity and that the "communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." AAB Joint Venture, 75 Fed.Cl. at 456 (2007) (quoting Energy Capital Corp. v. United States, 45 Fed.Cl. 481, 484–85 (2000)).

■■■■ The government challenges PX 1338, PX 1339, PX 1406, and PX 1424 on the basis of attorney-client privilege. PX 1338 and 1339 involve email discussions between various Corps employees pursuant to preparation of technical analyses of WB's claim. WB concedes that a sentence in PX 1338 regarding the Office of Counsel's determination and the latest email in the PX 1339 chain should be redacted because they appear to reflect the legal advice of Elizabeth Oppenheimer Vavrica. After reviewing the document, the Court determines that the attorney-client privilege is properly invoked here as to the entire document. The first sentence of the email chain in PX 1338 and the latest email in PX 1339, which WB has already conceded are subject to the attorney client privilege, provide important context for the rest of the email discussion. The emails relate to counsel's advice to agency's personnel on plaintiff's REA claims and are all part of the same discussion.

■■■■ PX 1406 is not subject to the attorney-client privilege. There is no evidence of communication with an attorney in the emails. Neither Elizabeth Oppenheimer Vavrica nor Carolyn Fox (both counsels for the agency at this time) are copied on these emails. The email discussions involve communications with members of the Corps and relate to the investigation of WB's claims. There is no indication that the subject of the discussion relates to legal advice from agency counsel or reveals client communications requesting such advice.

■■■■ PX 1424 is subject to the attorney-client privilege. First it is an attachment to an email from agency counsel. In the email, counsel describes the attachment as "a detailed summary for me of our meeting with WBJV and their attorneys". The document was prepared by an employee of the Corps for the purpose of helping the Corps secure assistance in legal proceedings instituted by WB.

## C. CONCLUSION

For the foregoing reasons, the Court sustains the government's objections to the following exhibits: PX 1338, PX 1339, and PX 1424 (attorney-client privilege as to all three, work product as to 1424). It overrules the government's objections to the remaining exhibits and rejects the government's request for a motion in limine as to those documents: PX 1261, PX 1262, PX 1280, PX 1333, PX 1335, PX 1337, PX 1363, PX 1370, PX 1371, PX 1405, PX 1406, and PX 1423. Accordingly, the government's motion in limine and that

of the plaintiff are **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**